858 A.2d 1113

JENEVIEVE CASINELLI, PLAINTIFF–RESPONDENT,
v. WILFREDO MANGLAPUS, DEFENDANT–
APPELLANT.

Argued January 5, 2004—Decided September 22, 2004.

*William C. Carey* argued the cause for appellant (*McElroy, Deutsch & Mulvaney*, attorneys; *Mr. Carey* and *Nicole S. Alexander*, on the briefs).

*John N. Giorgi* argued the cause for respondent (*Peter M. Rozano*, attorney).

Justice LONG delivered the opinion of the Court.

The question presented on this appeal is whether a plaintiff, who belatedly files a physician certification under the New Jersey Automobile Insurance Cost Reduction Act (AICRA), *N.J.S.A.* 39:6A–1 to –34, must suffer the dismissal of his or her complaint or whether remedies short of dismissal will suffice. We hold that the physician certification is neither a fundamental element of the

AICRA cause of action nor analogous to a pleading and therefore, that neither dismissal with nor without prejudice is compelled. Rather, we view the late filing of the physician certification as akin to a discovery violation, with respect to which the court may resort to any of a full panoply of remedies, ranging from an order to compel production through dismissal, depending on the facts.

## I.

On December 27, 1999, a pickup truck, in which Jenevieve Casinelli was a passenger, was struck in the rear by an automobile owned and operated by Wilfredo S. Manglapus. Casinelli was injured in the accident. She was examined by Dr. James Garabo, a chiropractor, who sent her to the emergency room at Rahway Hospital where she was prescribed a cervical collar and over-the-counter pain medication, and advised to see a neurologist. The cervical x-ray taken at the hospital disclosed "[l]oss of normal lordosis [1] with mild kyphosis [2] [backward curvature of the spine] centered on C4–5."

On December 29, 1999, Casinelli was examined by Dr. Nazar H. Haidri, a neurologist, who diagnosed post-concussion syndrome; post-traumatic headaches; acute cervical, dorsal and lumbar sprain; and symptoms consistent with bilateral lumbar radiculopathy.[3] Dr. Haidri also observed a limited range of motion in both the cervical and lumbar areas of Casinelli's spine and spasms "over both cervical para-vertebral muscles." Dr. Haidri noted that Casinelli had been involved in a prior motor vehicle accident

---

[1] Lordosis refers to a hollow or saddle back; an abnormal extension deformity: anteroposterior curvature of the spine, generally lumbar with the convexity looking anteriorly. *Stedman's Medical Dictionary, Unabridged Lawyers' Edition, 810* (5th ed.1984).

[2] Kyphosis (AKA Cyphosis), is a deformity of the spine characterized by extensive flexion. *Stedman's, supra,* at 752.

[3] Radiculopathy is a disease of the spinal nerve roots. *Stedman's, supra,* at 1187.

in which she had injured her neck and back and determined that the earlier injuries were "markedly aggravated by the accident of December 27, 1999."

Based upon his examination, Dr. Haidri ordered several Magnetic Resonance Imagery (MRI) studies that were read by Dr. Howard Kessler, a radiologist. Dr. Kessler issued two reports on February 16, 2000, in which he concluded that the cervical MRI disclosed "[r]eversed cervical lordosis consistent with muscular spasm ... [d]isc herniation at C5-[ ]6, central and left paracentral with sac indentation." As a result, Dr. Haidri referred Casinelli to Dr. Steven L. Nehmer, an orthopedic surgeon, who examined her on May 11, 2000.

In a report dated May 16, 2000, Dr. Nehmer recommended that Casinelli undergo either a cervical epidural injection or physical therapy. In a subsequent report dated September 29, 2000, Dr. Nehmer diagnosed Casinelli as suffering from a cervical disc herniation at C5-6 along with lumbar strain. Because a cervical MRI taken after Casinelli's 1998 injury had not revealed any disc herniation, Dr. Nehmer opined that Casinelli's injuries were causally related to the accident with Manglapus. Overall, Dr. Nehmer viewed Casinelli's prognosis as "guarded."

On July 17, 2000, Dr. Charles G. Kalko, a neurosurgeon, examined Casinelli and issued a report diagnosing her as having suffered cervical radiculopathy and cervical deformity at C5-6, as a result of the accident. He recommended that Casinelli "start physical therapy and consider obtaining a cervical CT myelogram and then consider surgical intervention." Dr. Kalko also concluded that Casinelli's injuries were causally related to the accident, and declared her prognosis "guarded pending further diagnostic testing and surgery."

On July 25, 2000, Casinelli was referred to Dr. Paul K. Ratzker, a neurosurgeon, for treatment. In a report dated July 25, 2000, Dr. Ratzker diagnosed Casinelli as suffering from "left sided C6 cervical radiculopathy secondary to the disc herniation at the C 5-

6 level." He prescribed pain medication and a course of physiotherapy.

After Casinelli completed a three-week course of physical therapy, Dr. Ratzker reevaluated her and reported she was feeling better, but still experiencing "occasional spurts of pain." He recommended that she either try a cervical epidural steroid injection or continue with the physical therapy and pain medication. Casinelli elected to continue with the physical therapy and returned for an examination by Dr. Ratzker on September 14, 2000, at which point she reported that she was feeling better, but had begun experiencing numbness in a small area in her forearm. Overall, Dr. Ratzker found Casinelli had experienced improvement with physical therapy and recommended a continued course of therapy twice a week for six more weeks and a reevaluation thereafter. He assessed her prognosis as "fair."

On July 17, 2001, Casinelli filed a complaint against Manglapus alleging that she was injured as a result of his automobile negligence. Manglapus filed an answer on October 12, 2001, and on February 25, 2002, moved for summary judgment seeking dismissal of Casinelli's complaint, with prejudice, on the ground that she had failed to produce a physician certification establishing that she met the verbal threshold requirement contained in *N.J.S.A.* 39:6A–8(a). In response to the motion, Casinelli submitted a report by Dr. Haidri that stated that her post-traumatic tinnitus, blurred vision, chronic cervical, dorsal and lumbar sprain, and disc herniation at C5–C6, were causally related to injuries sustained during the December 27, 1999, accident. Attached to that report was a report of Dr. Nehmer, dated May 16, 2000, supporting Dr. Haidri's conclusions. However, Casinelli did not file those reports in certification form within 120 days of Manglapus' answer as required by AICRA.

On March 20, 2002, in opposition to the summary judgment motion, Casinelli filed the requisite physician certifications. Two medical experts (Drs. Haidri and Ratzker) certified that Casinelli sustained a "permanent and significant injury" as a result of the

December 27, 1999, accident, based upon continuing symptoms present after the accident, including a permanent disruption of her intervertebral disc. In addition to those certifications, Casinelli submitted her own certification outlining her injuries, course of treatment, and her then-current complaints of pain and physical limitation. The trial court declined to dismiss Casinelli's complaint, finding good cause to extend the time within which to file the physician certification.

By leave granted, Manglapus challenged the trial court's order. On appeal, he argued that Casinelli's complaint required dismissal with prejudice for failure to comply with *N.J.S.A.* 39:6A–8(a); and that even if her complaint was dismissed without prejudice, the statute of limitations had expired, and thus, the refiling was prohibited. Casinelli countered that there is nothing in AICRA to suggest that the Legislature intended meritorious suits to be dismissed either with or without prejudice for the late filing of a physician certification.

The Appellate Division rejected Manglapus' argument that a dismissal with prejudice is compelled and held instead that a dismissal without prejudice is the proper remedy for late filing. *Casinelli v. Manglapus,* 357 *N.J.Super.* 398, 401, 815 *A.*2d 524 (App.Div.2003). However, recognizing the "harsh consequences" that would flow from the dismissal without prejudice remedy where the statute of limitations had expired, the court held, the doctrines of substantial compliance and equitable estoppel could be invoked by Casinelli. *Id.* at 416–17, 815 *A.*2d 524. Accordingly, it affirmed the denial of summary judgment and remanded the case for proceedings consistent with its opinion. *Ibid.* We granted Manglapus' petition for certification. 177 *N.J.* 491, 828 *A.*2d 918 (2003). We now affirm in part and reverse in part.

II.

On appeal, the parties essentially stake out the same ground as they did below. Manglapus contends that dismissal with prejudice is the proper remedy under AICRA and that even if dismissal

without prejudice is allowed, it would do Casinelli no good because the expiration of the statute of limitations would prevent the refiling of her compliant.

Casinelli counters that nothing in AICRA requires dismissal for a late-filed physician certification and that the court has available a broad set of less draconian remedies to address that issue.

## III.

AICRA is, as its name implies, a cost-containment initiative enacted as a refinement to the no-fault automobile insurance system that originally became law in this State in 1972. *See Caviglia v. Royal Tours of Am.*, 178 *N.J.* 460, 466–71, 842 *A.*2d 125 (2004) (detailing history and amendments to no-fault system). The legislative findings and declarations underlying AICRA are unequivocal; cost containment, fraud avoidance and a fair rate of return to insurers. *See N.J.S.A.* 39:6A–1.1(b).

To achieve those goals, AICRA follows the template of its predecessor, the 1988 Verbal Threshold Act (*N.J.S.A.* 39:6A–8), that allowed purchasers of automobile insurance to choose between two options: a policy providing unrestricted recovery of non-economic damages with a concomitantly high premium or a policy with a "verbal threshold" limiting non-economic losses to certain categories of injury with a proportionately lower premium.[4]

AICRA, effective on March 22, 1999, continued the two option model, allowing purchasers of automobile insurance to choose between a "basic policy" that provides "for a revised lawsuit

---

[4] The categories of injury for which non-economic losses were recoverable under the 1988 version were: (1) death; (2) dismemberment; (3) significant disfigurement; (4) fracture; (5) loss of a fetus; (6) permanent loss of use of a body organ or member; (7) permanent consequential limitation of use of a body organ or member; (8) significant limitation of use of a body function or system; or (9) a non-permanent injury that impairs the performance of substantially all of the usual and customary daily activities of 90 of the 180 days following the accident. *N.J.S.A.* 39:6A–8(a) (1988), *amended by N.J.S.A.* 39:6A–8(a) (1998).

threshold for suits for pain and suffering and eliminates suits for injuries that are not serious or permanent, including those for soft tissue injuries," *N.J.S.A.* 39:6A–1.1 and –8(a), and an "alternative" policy, without threshold limitations, *N.J.S.A.* 39:6A–8(b).

Under AICRA, the limited lawsuit option only allows recovery for non-economic losses if the plaintiff

> has sustained a bodily injury which results in death; dismemberment; significant disfigurement or significant scarring; displaced fractures; loss of a fetus; or a permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement. An injury shall be considered permanent when the body part or organ, or both has not healed to function normally and will not heal to function normally with further medical treatment.
>
> [*N.J.S.A.* 39:6A–8(a).]

As is evident from that language, the main difference between the AICRA threshold and prior law is that AICRA tightened the categories of injury that would justify non-economic damages. *See Sponsor's Statement to Senate Bill No. 3,* at 59 (Apr. 2, 1998) ("[i]n order to further limit the number of lawsuits filed and thereby reduce premiums for bodily injury coverage, the bill completely eliminates the existing verbal threshold and substitutes a new verbal threshold which is intended to eliminate some of the lawsuits for minor injuries, including soft tissue injuries, which are neither serious nor permanent"); *see also* Cynthia M. Craig & Daniel J. Pomeroy, *New Jersey Auto Insurance Law* § 15:4–1a at 255 (2004) (commenting on legislative intent to address through AICRA "the failure of prior law to stem the tide of lawsuits related to soft-tissue injuries").

AICRA also requires the filing of a physician certification:

> In order to satisfy the tort option provisions of this subsection, the plaintiff shall, within 60 days following the date of the answer to the complaint by the defendant, provide the defendant with a certification from the licensed treating physician or a board-certified licensed physician to whom the plaintiff was referred by the treating physician. The certification shall state, under penalty of perjury, that the plaintiff has sustained an injury described above. The certification shall be based on and refer to objective clinical evidence, which may include medical testing, except that any such testing shall be performed in accordance with medical protocols pursuant to subsection a. of section 4 of P.L.1972, c. 70 (C.39:6A–4) and the use of valid diagnostic tests administered in accordance with section 12 of P.L.1998, c. 21 (C.39:6A–4.7). Such testing may not be experimental in nature or

dependent entirely upon subjective patient response. The court may grant no more than one additional period not to exceed 60 days to file the certification pursuant to this subsection upon a finding of good cause.

A person is guilty of a crime of the fourth degree if that person purposefully or knowingly makes, or causes to be made, a false, fictitious, fraudulent, or misleading statement of material fact in, or omits a material fact from, or causes a material fact to be omitted from, any certification filed pursuant to this subsection. Notwithstanding the provisions of subsection e. of *N.J.S.A.* 2C:44–1, the court shall deal with a person who has been convicted of a violation of this subsection by imposing a sentence of imprisonment unless, having regard to the character and condition of the person, the court is of the opinion that imprisonment would be a serious injustice which overrides the need to deter such conduct by others. If the court imposes a noncustodial or probationary sentence, such sentence shall not become final for 10 days in order to permit the appeal of such sentence by the prosecution. Nothing in this subsection a. shall preclude an indictment and conviction for any other offense defined by the laws of this State. In addition, any professional license held by the person shall be forfeited according to the procedures established by section 4 of P.L.1997, c. 353 (C.2C:51–5).

[*N.J.S.A.* 39:6A–8(a).]

The physician certification provision has two purposes: to supply evidence that a plaintiff has, in fact, sustained an injury that qualifies for recovery of non-economic damages under the new verbal threshold and, to provide a legal foundation for a charge of perjury, should false swearing later be shown. *See Watts v. Camaligan,* 344 *N.J.Super.* 453, 782 *A.*2d 479 (App.Div. 2001). That is the backdrop for our inquiry.

## IV.

In *Alan J. Cornblatt, P.A. v. Barow,* 153 *N.J.* 218, 708 *A.*2d 401 (1998), we addressed the late filing of an Affidavit of Merit under *N.J.S.A.* 2A:53A–29, and concluded that the proper remedy for that dereliction was dismissal "with prejudice in all but extraordinary circumstances." *Id.* at 242, 708 *A.*2d 401. Manglapus argues that the Affidavit of Merit statute is an analogue to AICRA and that the belated filing of an AICRA physician certification warrants the same treatment. We disagree.

In *Watts, supra,* the Appellate Division was faced with the question of "what sanction or remedy lies for failing to file a timely [AICRA] physician certification." 344 *N.J.Super.* at 461,

782 *A.*2d 479. The defendants in *Watts* advanced the argument that the "plaintiff's failure to comply with the filing requirements of AICRA, like the failure to abide by the requirements of the Affidavit of Merit statute, mandates dismissal 'with prejudice in all but extraordinary circumstances.'" *Ibid.* (quoting *Cornblatt, supra*, 153 *N.J.* at 242, 708 *A.*2d 401). In rejecting that contention, the Appellate Division in *Watts* properly focused on the details of the Affidavit of Merit statute and, more particularly, on the statutory prescription that failure to file the affidavit "shall be deemed a failure to state a cause of action." *See id.* at 462, 782 *A.*2d 479 (quoting *N.J.S.A.* 2A:53A–29).

The court in *Watts* concluded that it was that specific language that generated the outcome in *Cornblatt* and that its absence in AICRA required a different analysis. *Id.* at 464, 708 *A.*2d 401. Thus, it determined that AICRA is not governed by the dismissal with prejudice—extraordinary circumstances template of *Cornblatt. See also Konopka v. Foster*, 356 *N.J.Super.* 223, 812 *A.*2d 363 (App.Div.2002)(rejecting dismissal with prejudice remedy as appropriate sanction for belatedly filed physician certification). The courts in *Watts* and *Konopka* went on to hold that because the physician certification is a statutory requirement, without which the "plaintiff is precluded from continuing to prosecute an action," *Watts*, 344 *N.J.Super.* at 466–67, 782 *A.*2d 479, it is analogous to a pleading, and thus subject to dismissal without prejudice under *R.* 4:6–2. *See Printing Mart–Morristown v. Sharp Electronics Corp.*, 116 *N.J.* 739, 563 *A.*2d 31 (1989) (dismissal without prejudice should ordinarily be granted in response to a successful motion for failure to state a claim); *Konopka, supra*, 356 *N.J.Super.* at 228, 812 *A.*2d 363. In so ruling, the Appellate Division was only partially correct.

We fully subscribe to the Appellate Division's conclusion here, echoing *Watts* and *Konopka*, that the physician certification is not a fundamental element of the AICRA cause of action and that therefore the *Cornblatt* template of dismissal with prejudice except in extraordinary circumstances is inapplicable. Unlike the

Affidavit of Merit statute that pointedly equates failure to file the affidavit with "failure to state a cause of action," there is nothing in AICRA to suggest that the Legislature intended that result. In the absence of any such direction, it falls to us to determine the "essential purpose and design" of AICRA and to limn a remedy that will effectuate the Legislature's intentions. *Aponte–Correa v. Allstate Ins. Co.,* 162 *N.J.* 318, 323, 744 *A.*2d 175 (2000).

It is as to the remedy that we part company from *Watts, Konopka* and the Appellate Division in this case. In our view, the perceived analogy between the AICRA physician certification and a pleading, which is the underpinning of the dismissal without prejudice remedy, does not withstand scrutiny.

Pleadings are a unique aspect of our jurisprudence. They serve to identify the claims and defenses that are being advanced by the parties and to narrow the issues in dispute.[5] *See* James Hazard, *Civil Procedure,* 127–84 (3d ed.1985). If a pleading does not state a claim that, if proven, would entitle the pleader to relief, it is facially defective and thus subject to dismissal under *R.* 4:6–2(e). An example would be a complaint seeking damages for breach of a contract to marry. Because New Jersey does not recognize such a cause of action, *N.J.S.A.* 2A:23–1, there would be no basis upon which the case could proceed, thus compelling dismissal.

In embracing the dismissal without prejudice remedy in *Watts* and *Konopka,* the Appellate Division characterized the physician certification as statutorily essential to the continuance of the litigation and thus denominated its absence as structurally parallel to a pleading. Although superficially seductive, that analogy only

---

[5] The only pleadings allowed by our rules are set forth in *R.* 4:5–1:

(a) Pleadings Allowed. There shall be a complaint and an answer; an answer to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint pursuant to *R.* 4:8; a third-party answer, if a third-party complaint is served; and a reply, if an affirmative defense is set forth in an answer and the pleader wishes to allege any matter constituting an avoidance of the defense. No other pleading is allowed.

holds up in the narrow band of cases in which a plaintiff is unwilling or unable to produce a physician certification. As the courts in *Watts* and *Konopka* properly concluded, in such cases, the litigation cannot go forward and thus the complaint should be dismissed.

However, in the vast majority of cases in which an attorney has simply slipped up and missed the filing date for an otherwise acceptable physician certification, the analogy to a pleading breaks down. In such cases, there is no statutory bar to the continuation of the lawsuit. Rather, the physician certification is belatedly produced evidence supporting the otherwise cognizable claims advanced in the complaint. In such circumstances, we can see no warrant for adopting as mandatory the dismissal without prejudice remedy recognized by the court in *Printing Mart, supra,* as appropriate for pleadings that, on their face, fail to state a claim on which relief can be granted.

■ On the contrary, we view the tardy presentation of a physician certification as falling under the broad umbrella of failure to make discovery, thus subject to the arsenal of remedies provided in our rules for such procedural errors. Put another way, the court has available to it, along with dismissal, where warranted, discovery-type sanctions such as orders to compel, the award of reasonable expenses incurred in obtaining the certification, and counsel fees. *See R.* 4:23–1 to –5. In each case, the court should assess the facts, including the willfulness of the violation, the ability of plaintiff to produce the certification, the proximity of trial, and prejudice to the adversary, and apply the appropriate remedy. That methodology provides judges with discretion to choose a response that is proportionate to the procedural stimulus; saves for trial the meritorious claims of truly injured victims; and allows dismissal of cases in which a plaintiff cannot or will not supply a certification or in which a plaintiff's conduct has irremediably prejudiced the defendant.

The bedrock of our conclusion is the legislative purpose behind the physician certification requirement of AICRA. As we have

indicated, the certification serves two purposes; to provide evidence that a plaintiff's claim is meritorious in that he or she has, in fact, sustained an injury that qualifies for the recovery of non-economic damages under the revised AICRA verbal threshold, and to thwart fraud by furnishing a legal foundation for a charge of perjury, should false swearing later be shown. By allowing courts the flexibility to accept belated physician certifications, under appropriate circumstances, both of the AICRA's aims are advanced; the meritorious cases of injured plaintiffs can go forward, and a certification, paving the way for a future perjury action in the case of false swearing, is on file.

The same cannot be said of the mandatory dismissal with prejudice remedy. Given the number of complaints filed on the eve of the expiration of the statute of limitations, that remedy does nothing but guarantee the random elimination of meritorious cases. If AICRA's purpose simply were to thin the herd of cases at any cost, that outcome might be appropriate. But AICRA's intention was quite different: to cull out those non-meritorious matters in which the new threshold cannot be met and to counter fraud. Dismissing legitimate cases involving late physician certifications advances neither of those goals; treating the late filing of a physician certification as a discovery violation, subject to remedies ranging from penalties to dismissal, depending on the facts, does.

It goes without saying that, unless the late filing is entirely faultless on the attorney's part, some sanction should be imposed. As we have said, although AICRA did not intend the random dismissal of meritorious cases, neither was its purpose to allow non-meritorious cases to remain on the docket indefinitely due to attorney inattention. Abiding by the physician certification time requirements thus serves the fundamental purpose of disposing of non-meritorious cases expeditiously. Accordingly, attorney delay should not go unsanctioned even though dismissal will not be warranted in most cases.

## V.

Insofar as the judgment of the Appellate Division affirmed the denial of Manglapus' motion to dismiss Casinelli's complaint with prejudice, it is affirmed. The Court's concomitant conclusion that a dismissal without prejudice is required is reversed. Our disposition obviates the need to reach the issues of substantial compliance and equitable estoppel. The case is remanded to the trial court for further proceedings consistent with its original disposition of the case.

Justice LaVECCHIA, dissenting.

I have a different view of the legislative intent animating the provisions of the New Jersey Automobile Insurance Cost Reduction Act (AICRA), L.1998, c. 21 and c. 22 generally, and the physician certification requirement specifically. AICRA added that requirement to the other conditions that an accident victim must satisfy to pursue a tort recovery under the limitation on lawsuit provisions set forth in N.J.S.A. 39:6A–8a. In this matter, the Appellate Division held that the plaintiff's failure to comply with the physician certification requirement could result in the dismissal without prejudice of her complaint, notwithstanding that the two-year statute of limitations for instituting suit had run. *Casinelli v. Manglapus*, 357 *N.J.Super.* 398, 815 *A.*2d 524 (2003). The majority now marginalizes dismissal (with or without prejudice) of such actions due to the failure to provide a timely certification. In my view, the Court's determination will prevent the culling of verbal threshold lawsuits that AICRA was designed to accomplish. Although I respect the majority's difference with the Legislature on that policy choice, culling such cases was, and is, a policy choice that was within the legislative prerogative. Thus, in my view, the analyses that are more true to the legislative scheme are those of the Appellate Division in *Watts v. Camaligan*, 344 *N.J.Super.* 453, 782 *A.*2d 479 (2001) and *Konopka v. Foster*, 356 *N.J.Super.* 223, 812 *A.*2d 363 (2002).

## I.

There is no need to duplicate the majority's succinct history of New Jersey's system of no-fault automobile insurance. Suffice it to say, in 1998 AICRA tightened the limitations on the injuries that are considered serious enough to allow for a tort recovery, notwithstanding an insured's selection of the limitation on lawsuit option in an insurance policy (the "verbal threshold"). *N.J.S.A.* 39:6A–8a. AICRA eliminated those injury categories that were regarded as subjective in nature. *See Sponsor's Statement to Senate Bill No. 3,* at 59 (Apr. 2, 1998) (stating that "[i]n order to further limit the number of lawsuits filed and thereby reduce premiums for bodily injury coverage, the bill completely eliminates the existing verbal threshold and substitutes a new verbal threshold which is intended to eliminate some of the lawsuits for minor injuries, including soft tissue injuries, which are neither serious nor permanent"); *see also* Craig & Pomeroy, *New Jersey Auto Insurance Law* § 15:4–1a (Gann, 2003) (commenting on legislative intent to address through AICRA "the failure of prior law to stem the tide of lawsuits related to soft-tissue injuries").

Thus, a person injured in an automobile accident may maintain a lawsuit for economic damages only if the injury falls into one of the following categories: (1) death; (2) dismemberment; (3) significant disfigurement or significant scarring; (4) a displaced fracture; (5) loss of a fetus; or (6) *a permanent injury within a reasonable degree of medical probability,* other than scarring or disfigurement. *N.J.S.A.* 39:6A–8a (emphasis added). An "injury shall be considered permanent when the body part or organ, or both, has not healed to function normally and will not heal to function normally with further medical treatment." *Ibid.* In addition, the Legislature added the requirement of a physician certification that must be produced early in the litigation, plainly to prevent verbal threshold cases from clogging the courts by a mechanism that enables faulty suits to be culled from the system early and easily. Specifically, *N.J.S.A.* 39:6A–8a provides that

[i]n order to satisfy the tort option provisions of this subsection, the plaintiff shall, within 60 days following the date of the answer to the complaint by the defendant, provide the defendant with a certification from the licensed treating physician or a board-certified licensed physician to whom the plaintiff was referred by the treating physician. The certification shall state, under penalty of perjury, that the plaintiff has sustained an injury described above. The certification shall be based on and refer to objective clinical evidence, which may include medical testing. . . . The court may grant no more than one additional period not to exceed 60 days to file the certification pursuant to this subsection upon a finding of good cause.

The making of a false or misleading certification constitutes a crime, and provides grounds for forfeiture of the professional license held by the person so certifying. *Ibid.* Thus, while the heightened verbal threshold effectuates "the statute's clear purpose to limit standing for recovery for pain and suffering," *Watts, supra,* 344 *N.J.Super.* at 465, 782 *A.*2d 479 (citing *Governor's Recommendations for Reconsideration Statement to Senate Bill No. 3,* at 4 (Apr. 27, 1998) (*L.* 1998, *c.* 21)), the corollary physician certification requirement is plainly designed to deter fraudulent claims, to punish physicians who collude in the presentation of those claims, and to facilitate early and easy elimination of faulty suits from court dockets.

Legislative expressions during passage of AICRA, as well as gubernatorial statements upon presentment of the bill, convey these themes. The statute was the product of legislative and executive compromise. The bill was the subject of a gubernatorial conditional veto, in which the Governor explained why the bill should be amended in order for it to receive her signature.[1] The Governor discussed the principal provisions of AICRA in light of "the level of interest in and the certainty of judicial interpretation," and reaffirmed the bill sponsors' overall view that the statute was designed "to limit standing for recovery for pain and

---

[1] Governor Christine Todd Whitman did not sign Senate Bill No. 3 when it first was presented for her signature, exercising her constitutional prerogative to conditionally veto the bill with recommendations that led directly to the legislation we address in this appeal. *See N.J. Const.* art. V, § 1, par. 14; *Oswin v. Shaw,* 129 *N.J.* 290, 308, 609 *A.*2d 415 (1992) (stating that adoption of legislation following conditional veto renders conditional veto message strong evidence of legislative intent).

suffering." *Governor's Recommendations for Reconsideration Statement to Senate Bill No. 3*, at 4 (Apr. 27, 1998) (*L.* 1998, *c.* 21). More to the point, the Governor stated:

Complementing the tightened lawsuit threshold in controlling premium costs are several measures designed to combat fraud. First, every complaint in a pain and suffering lawsuit brought under the lawsuit threshold must be accompanied by a certification from the treating physician attesting the seriousness of the plaintiff's condition. The certification is executed under penalty of perjury; fraudulent filing of a certification is grounds for imprisonment and revocation of one's professional license. *The certification is intended as an anti-fraud measure to assure legitimacy; it is necessary to state a claim, not sufficient to establish one, and will be subject to challenge through the normal discovery and summary judgment processes.*

[*Id.* at 4–5 (emphasis added).]

## II.

Plaintiff did not submit the required certification within the sixty-day time period required under *N.J.S.A.* 39:6A–8a, or during the additional sixty-day extension period permitted for good cause. *Casinelli, supra,* 357 *N.J.Super.* at 406, 815 *A.*2d 524. Defendant moved for summary judgment, thereby presenting the question whether dismissal due to plaintiff's undisputed failure to provide the sworn physician's certification should be with, or without, prejudice.

In *Watts, supra,* the Appellate Division held that the failure to comply timely with the physician certification requirement of AICRA warranted dismissal without prejudice. 344 *N.J.Super.* at 468, 782 *A.*2d 479. The automobile accident in *Watts* occurred on February 8, 2000. A complaint was filed on March 17, 2000, and an answer followed on April 19, 2000. *Id.* at 458, 782 *A.*2d 479. On September 20, 2000, the defendant filed a motion to dismiss based on plaintiff's failure to supply a physician's certification within the time allotted under AICRA. The plaintiff thereupon filed the necessary certification on October 6, 2000, in response to the motion. *Id.* at 458, 782 *A.*2d 479. Significantly, in *Watts* "the two-year statute of limitations period set forth in *N.J.S.A.* 2A:14–2 had not expired at the time the trial court had considered the

defendant's motion." *Casinelli, supra,* 357 *N.J.Super.* at 410, 815 *A.*2d 524 (noting contrasting posture of *Watts* ).

The *Watts* court compared the physician certification requirement of AICRA with the similarly worded Affidavit of Merit Statute, *N.J.S.A.* 2A:53A–27, made applicable to professional malpractice or negligence actions. *Watts, supra,* 344 *N.J.Super.* at 462–63, 782 *A.*2d 479.[2] The court noted that the Affidavit of Merit statute states that failure to provide an affidavit "shall be deemed a failure to state a cause of action." *Id.* at 462, 782 *A.*2d 479 (quoting *N.J.S.A.* 2A:53A–29). In contrast, AICRA does not have a specific provision that addresses the effect of a failure to comply with the certification requirement. AICRA only states "that a plaintiff 'shall' provide the required certification '[i]n order to satisfy the tort option provisions' of the subsection, which describes the types of injury required to qualify for non-economic damages under the limitation on lawsuit option." *Id.* at 462–63, 782 *A.*2d 479 (quoting *N.J.S.A.* 39:6A–8a).

Although recognizing that "[t]he physician certification requirement was intended as an anti-fraud measure to assure legitimacy," the court likened the requirement to "the imposition of a condition for the continued maintenance of a lawsuit." *Id.* at 466, 782 *A.*2d 479. The court explained that

[t]he requirement is procedural in nature related to the sufficiency of the pleadings, *i.e.* the statement of a claim. The required production is not intended to go to the

---

2 The Affidavit of Merit statute provides that:

In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause.
[*N.J.S.A.* 2A:53A–27.]

establishment of a cause of action. We conclude that the failure to comply with the physician certification requirement of AICRA was not intended by the Legislature to preclude future suits for legitimate injuries sustained as the result of another's negligence.

Our analysis is consistent with *R.* 4:6-2(e), Failure to State a Claim, and the holding in *Printing Mart v. Sharp Electronics,* 116 *N.J.* 739, 772, 563 *A.*2d 31 (1989), that, "barring any other impediment such as a statute of limitations," a dismissal without prejudice should ordinarily be granted in response to a successful motion for failure to state a claim. Here, the impediment to future causes of action created by the Legislature was the revised verbal threshold, not the failure to file a physician certification.

[*Id.* at 467, 782 *A.*2d 479.]

The intersection of the statute of limitations for filing a tort action with the physician certification condition for bringing suit under the verbal threshold, was not present in *Watts.* It is squarely presented here. The statute of limitations on plaintiff's tort action had run at the time that plaintiff filed the physicians' certifications and the trial court had to decide whether to dismiss the action with or without prejudice.

*Konopka, supra,* presented similar circumstances. 356 *N.J.Super.* 223, 812 *A.*2d 363. There, the plaintiff served on the defendant, within one month of the filing of the defendant's answer, a report by her treating chiropractor that established permanency, but failed to file the physician certification until sixteen months after the defendant's answer, when more than two years had elapsed from the date of the motor vehicle accident. *Id.* at 228, 812 *A.*2d 363. Citing *Watts,* the *Konopka* court stated that although plaintiff's claim should not have been dismissed with prejudice for failure to file timely the physician certification, "a transformation of the dismissal to one without prejudice offers plaintiff no particular benefit in this case because any reinstitution of suit is barred by the statute of limitations." *Ibid.* I agree.

The remainder of the court's analysis considered whether the doctrine of substantial compliance could be applicable. Noting that the two-fold purpose of the physician certification requirement was to acquaint the defendant with the nature and severity of the plaintiff's alleged injuries and to prevent fraud, *id.* at 229, 812 *A.*2d 363, the court held that the service of a mere report, as

opposed to a certification, did not demonstrate general compliance with the purpose of the statute. *Ibid.* Writing for the court, Judge Payne stated that "[t]he purpose of the statute and its enforcement mechanism would be entirely undercut if service of a mere report were deemed the substantial equivalent of service of a certification." *Ibid.* On that, I agree also.

Thus, I am of like mind with the courts in *Watts* and *Konopka* to the extent that they concluded that the failure to comply with the strict temporal requirements of AICRA's physician certification obligation should be treated as the equivalent of a failure to state a claim, and that the presumptive disposition in such a case should be a dismissal without prejudice, barring any other "impediment" such as a statute of limitations. Where, as here, the statute permits a common-law negligence action to proceed subject to certain substantive (the severity of injury) and procedural (the physician certification) requirements, barring clear legislative intent to the contrary a plaintiff's failure to comply with the procedural requirement should be handled consistent with our involuntary dismissal practice under *Rule* 4:37-2(a), which provides that the involuntary dismissal of an action for failure to comply with a procedural rule should be presumptively without prejudice.[3] That policy fits here.

---

[3] *Rule* 4:37-2(a) states:

> For failure of the plaintiff ... to comply with these rules or any order of court, the court in its discretion may on defendant's motion dismiss an action or any claim against the defendant. Such a dismissal shall be without prejudice unless otherwise specified in the order.

The Rule is invoked typically to dismiss actions or claims for procedural deficiencies, such as violations of discovery rules or related court orders. *See, e.g., Woodward–Clyde Consultants v. Chemical & Pollution Scis., Inc.,* 105 *N.J.* 464, 469–70, 523 *A.2d* 131 (1987) (dismissing counterclaim for failure to comply with court order to supply certified answers to interrogatories); *Scalza v. Shop Rite Supermarkets, Inc.,* 304 *N.J.Super.* 636, 637, 701 *A.2d* 764 (App.Div.1997) (upholding dismissal of complaint for failure to comply with order requiring more specific answers to interrogatories); *Bd. of Educ. of Twp. of W. Milford v. Rockwell Mfg. Co.,* 173 *N.J.Super.* 506, 506–08, 414 *A.2d* 613 (Law Div.1980) (dismissing complaint for failure to answer interrogatories).

AICRA contains no provision that requires dismissal *with prejudice* for failure to provide a timely physician certification. Nor does the legislative history specify such a permanently preclusive effect. Although the Governor's Statement refers to the physician certification requirement as "necessary to state a claim," the language of the statute only specifies that "in order to satisfy the tort option," the certification must be submitted. I do not impute from that language a legislative intent to preclude reinstitution of a personal injury action for failure to provide timely the physician certification.[4] However, the statutory language, sharpened by the Governor's Statement, instructs us that the requirement is necessary to pursue the tort option.

Accordingly, I would conclude that when a plaintiff fails to comply with the physician certification requirement and the timelines for its submission contained in *N.J.S.A.* 39:6A–8a, the plaintiff's case should be dismissed, but without prejudice to its reinstatement so long as there is not some other bar such as an expired statute of limitations that precludes the claim or action. Treating the physician certification as a procedural requirement, imposed as a condition of pursuing the tort option under the verbal threshold, fulfills the legislative intent to prevent a litigant from pursuing a claim that is not supported by a physician certification. And, it furthers the legislative mechanism for easy and early removal of faulty verbal threshold cases from the courts. The majority's determination today thwarts those purposes and therefore, I must respectfully dissent.

---

[4] In addition, I find no evidence in AICRA's language or history that requires that we treat the statutory time frame for submission of the physician certification as analogous to a limitation period for bringing a cause of action such that dismissal must be with prejudice, unless there are extraordinary circumstances. In contrast, I note that evidence of that sort motivated the Court's conclusion in *Alan J. Cornblatt, P.A. v. Barow,* 153 *N.J.* 218, 246–47, 708 A.2d 401 (1998) (discussing *Hartsfield v. Fantini,* 149 *N.J.* 611, 695 A.2d 259 (1997), and *Wallace v. JFK Hartwyck at Oak Tree, Inc.,* 149 *N.J.* 605, 695 A.2d 257 (1997), which involved legislation that required motion for trial *de novo,* following mandatory arbitration, to be filed within thirty days and stated expressly that failure to file within that time period would result in dismissal of any future court action).

*For affirmance in part; reversal in part and remandment*—Chief Justice PORITZ and Justices LONG, ZAZZALI, ALBIN and WALLACE—5.

*For dissent*—Justice LaVECCHIA—1.