**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4687-17T1

SCOTT PHILLIPS,
AS GUARDIAN AD LITEM,
ON BEHALF OF S.P., B.P.,
and K.P.,

     Plaintiff-Appellant,

v.

ARCHDIOCESE OF NEWARK,
and ST. THERESA SCHOOL,

     Defendants-Respondents.

_____

Argued September 30, 2020 – Decided October 14, 2020

Before Judges Haas, Mawla, and Natali.

On appeal from the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. C-000248-16.

Susan B. McCrea argued the cause for appellant.

Christopher H. Westrick argued the cause for respondents (Carella Byrne Cecchi Olstein Brody & Agnello, PC, attorneys; Christopher H. Westrick, of

counsel and on the briefs; Brian H. Fenlon, on the briefs).

PER CURIAM

Plaintiff Scott Phillips appeals from the Chancery Division's order denying his application for injunctive relief that would have required defendants Archdiocese of Newark (Archdiocese) and Saint Theresa School (STS) to re-enroll two of his children at the school for the 2017-2018 academic year. Plaintiff also challenges the court's order directing him to reimburse defendants' attorney's fees after plaintiff and his wife failed to appear for a deposition and then refused to answer the majority of the questions posed to them at a second deposition. Finally, plaintiff asserts that the court incorrectly denied his post-decision motion for sanctions against defendants for alleged discovery violations.

Having reviewed the record in light of the contentions advanced by plaintiff and the applicable law, we dismiss his appeal from the denial of his request for injunctive relief as moot, and affirm the court's determinations regarding the imposition of discovery sanctions.

I.

All of the relevant facts underlying plaintiff's application for injunctive relief are set forth in comprehensive detail in the thorough oral decision rendered

by Judge Donald A. Kessler on August 14, 2017.[1]  The parties are fully familiar with this history and, therefore, we recite only the most salient facts here.

Plaintiff and his wife are the parents of three children, S.P., B.P., and K.P.,[2] who attended STS, a kindergarten to eighth grade school in the Archdiocese.  In December 2016, plaintiff filed a complaint seeking injunctive relief[3] on behalf of S.P. and B.P. against defendants.  Plaintiff alleged that STS improperly addressed S.P.'s complaints concerning bullying by other students; wrongfully prevented B.P. from being named the eighth grade class valedictorian when he attended the school;[4] and refused to allow S.P. to play on the boys' basketball team after the girls' team was unable to field a squad.

On February 1, 2017, defendants expelled S.P. and K.P.[5] from STS because plaintiff had violated a provision in the school's handbook which stated that "[i]f a parent implicates [STS] in a legal matter, or names [STS] as a defendant in a civil matter, the parent/guardian will be requested to remove their

---

[1]  The judge issued a conforming order on August 15, 2017.

[2]  We use initials to identify the children in order to protect their privacy.

[3]  Plaintiff did not seek any money damages.

[4]  When the complaint was filed, B.P. was already attending high school.

[5]  At this time, S.P. was in the seventh grade and K.P. was in the fifth grade.

children immediately from the school." Two days later, we granted plaintiff's emergent application to permit the children to return to the school pending appeal. Shortly thereafter, the head of the Archdiocese rescinded their expulsion. On February 17, 2017, Judge Kessler entered an order requiring STS to allow S.P. to play in the boys' basketball team's final game and any post-season games for the remainder of the school year.

In March 2017, plaintiff sought to expand his litigation to include approximately eighty members of the school and church community as defendants. In response, defendants sent a letter to plaintiff on April 3, 2017, and notified him that he would not be permitted to enroll S.P. and K.P. in STS for the new school year beginning in September 2017. The letter explained:

> Actions and events initiated by you over the last several months have directly interfered with the fulfillment of this Mission not only for [STS], but also for many of its administration, staff, students, and parents. In order to restore the promise of a "family atmosphere" characterized by "respect, challenge, responsibility, and exceptional love," [STS] will not be able to accept [S.P. and K.P.'s] enrollment for the 2017-18 school year.

Plaintiff then requested an injunction requiring defendants to re-enroll the two children for the upcoming school year. Judge Kessler determined that a

plenary hearing was necessary to address the parties' claims, and he issued a number of scheduling and discovery orders.[6]

Following a multi-day hearing, Judge Kessler denied plaintiff's request for injunctive relief. In his lengthy oral opinion, the judge found that defendants made a valid "faith-based decision" not to re-enroll the children based upon their parents' choice "to pursue their grievances aggressively and in the most confrontational manner," which interfered with the mission of the school. Judge Kessler also concluded that defendants' "secular reasons" for declining to permit plaintiff to return S.P. and K.P. to the school provided an "independent" basis for their decision. In this regard, the judge noted that defendants properly relied upon the provisions of its handbook, which prohibited parents from disrupting or impeding the welfare and progress of the school community. In addition, the judge found that plaintiff had no contractual right to force the school to admit the two children in light of their parents' conduct.

With the denial of plaintiff's request for injunctive relief, the Chancery Division litigation finally drew to a close on February 15, 2018, when the judge

---

[6] The judge's orders requiring plaintiff and his wife to appear for depositions, and imposing sanctions upon plaintiff when they failed to do so, will be discussed in Section III of this opinion.

A-4687-17T1

entered a final order dismissing plaintiff's claims and setting the amount of the attorney's fees plaintiff was required to pay defendants for the discovery violations.[7]  This appeal followed.

## II.

As noted above, the only relief plaintiff was seeking at the conclusion of his litigation was an order requiring defendants to permit S.P. and K.P. to enroll in STS for the 2017-2018 school year.  While his appeal from the trial court's denial of this relief was pending, S.P. and K.P. attended other schools beginning in September 2017.  S.P. graduated from the eighth grade in June 2018 and K.P. graduated in June 2020.

Fifteen of the eighteen arguments plaintiff raises on appeal pertain to the court's decision denying his application for an order requiring defendants to readmit S.P. and K.P. to STS.[8]  However, because eighth grade is the highest grade level at STS, the two children can no longer attend the school.  Therefore, even if plaintiff were successful on his appeal, he could not receive the remedy he sought.

---

[7]  The court sent the February 15, 2018 order to the parties, but they did not receive it.  Therefore, the court reissued the order on May 4, 2018.

[8]  The remaining three issues deal with plaintiff's dissatisfaction with the court's orders on the discovery sanctions.

A-4687-17T1

Accordingly, we directed the parties to submit supplemental briefs on the question of whether, aside from the court's orders on discovery sanctions, the issues raised by plaintiff concerning the denial of injunctive relief were moot. In response, plaintiff acknowledged that he could no longer seek to have the children return to STS.[9] However, he alleged that the issues raised in his brief[10] concerned matters of public importance which should be decided even though the controversy was now moot. We disagree.

"Mootness is a threshold justiciability determination rooted in the notion that judicial power is to be exercised only when a party is immediately threatened with harm." Betancourt v. Trinitas Hosp., 415 N.J. Super. 301, 311 (App. Div. 2010) (citation omitted). "[O]ur courts normally will not entertain cases when a controversy no longer exists and the disputed issues have become moot." DeVesa v. Dorsey, 134 N.J. 420, 428 (1993) (Pollock, J., concurring). An issue has become moot "when the decision sought in a matter, when

---

[9] Defendants asserted that the fifteen issues were moot and, therefore, plaintiff's challenge to the order denying his request for injunctive relief should be dismissed.

[10] Among other things, plaintiff alleged that the STS handbook was unenforceable; the decision not to re-enroll the children violated a number of different statutes; the trial court denied plaintiff a fair trial; and the Archdiocese did not have the right to make the enrollment decision on behalf of STS.

rendered, can have no practical effect on the existing controversy." N.Y. Susquehanna & W. Ry. Corp. v. State Dep't of Treasury, Div. of Taxation, 6 N.J. Tax 575, 582 (Tax 1984), aff'd, 204 N.J. Super. 630 (App. Div. 1985).

The doctrine of mootness emanates from the Judiciary's unique institutional role as a branch of government that only acts when a genuine dispute is placed before it. We generally do not render advisory decisions retrospectively opining about the legality of matters that have already been resolved, for "[o]rdinarily, our interest in preserving judicial resources dictates that we do not attempt to resolve legal issues in the abstract." Zirger v. Gen. Accident Ins. Co., 144 N.J. 327, 330 (1996).

In limited instances, courts will address the merits of appeals that have become moot, electing to do so "where the underlying issue is one of substantial importance, likely to reoccur but capable of evading review." Ibid. For example, courts have set aside mootness concerns in certain cases where the matter evading review posed a significant public question or affected a significant public interest. See, e.g., In re Conroy, 98 N.J. 321, 342 (1985) (addressing the withholding or withdrawing of life sustaining treatment); State v. Perricone, 37 N.J. 463, 469 (1962) (considering blood transfusions for an infant that conflicted with the parents' religious beliefs).

A-4687-17T1

Guided by these well-established principles, we decline to reach the issues presented by plaintiff in Points I through XII and Points XVI through XVIII of his brief because his challenges to the order denying his request for injunctive relief are clearly moot. Both children have graduated from the eighth grade and can no longer return to the school. Therefore, plaintiff can receive no relief concerning this order. Because the children have graduated, this is also not a case where the underlying issues between the parties are likely to reoccur. Zirger, 144 N.J. at 330.

Contrary to plaintiff's contention, his challenge to defendants' enrollment decision is a purely private matter between his family and the school, which does not implicate or affect any significant public questions or public interest concerns. Under these circumstances, we discern no basis to issue an advisory opinion on the fifteen issues plaintiff has raised concerning an obviously moot matter. See State v. Rose, 206 N.J. 141, 189 (2011) (Rivera-Soto, J., concurring in part and dissenting in part) ("The notion that a court of appeals willy-nilly can decide issues unnecessary to the outcome of the case results in the wholesale issuance of advisory opinions, a practice our judicial decision-making system categorically rejects.").

Therefore, we dismiss this portion of plaintiff's appeal.

III.

In Points XIII through XV of his brief, plaintiff challenges Judge Kessler's decision to require him to pay defendants' counsel fees after plaintiff and his wife first failed to appear at a court-ordered deposition, and then declined to answer most of the questions posed to them at a second court-mandated deposition. Plaintiff asserts that the judge erred by concluding that he and his wife failed to cooperate with the depositions, and he alleges that the amount of the counsel fees award was excessive. Plaintiff also argues that the judge should have granted his belated request to impose sanctions upon defendants for their alleged discovery violations. Again, we disagree.

The facts underlying this portion of the parties' dispute are fully set forth in Judge Kessler's oral opinions rendered in connection with his July 28, 2017 order imposing the sanctions, and his February 15, 2018 order denying plaintiff's motion for reconsideration of the sanctions award and setting the amount of the counsel fees and costs plaintiff was required to pay defendants.[11] Therefore, we need only summarize the most relevant history here.

After plaintiff amended his complaint to seek an order requiring defendants to enroll S.P. and K.P. in STS for the 2017-2018 academic year,

[11] This order also denied plaintiff's motion to impose sanctions upon defendants.

A-4687-17T1

Judge Kessler determined that a plenary hearing was necessary to resolve the parties' conflicting factual allegations. On June 29, 2017, the judge allowed the parties to take discovery, including depositions, with "the limited purpose . . . to explore the issue of the re[-]enrollment of [plaintiff's] children at" STS. On July 11, 12, 13, and 19, 2017, the judge issued multiple orders addressing plaintiff's numerous motions and a number of discovery matters.

The July 12, 2017 order directed plaintiff and his wife to appear for depositions on July 19, and stated the depositions were to be "limited to the issues to be addressed at the July 24, 2017 plenary hearing." A July 13, 2017 order specified that the plenary hearing would be about plaintiff's application "to compel [the children] to be enrolled at [STS] for the 2017-2018 school year in order to determine if [d]efendants' decision to deny re-enrollment of [the children] was an abuse of discretion, or an appropriate secular decision, or an ecclesiastical decision protected by the First Amendment." The order also granted defendants' motion to compel plaintiff and his wife to be deposed prior to the start of the July 24 plenary hearing. The judge issued an additional order on July 13 that denied plaintiff's motion to bar his wife's deposition and reiterated that the depositions would be held on July 19.

Plaintiff and his wife did not appear for the depositions on July 19. On July 24, defendants filed a motion seeking sanctions due to this failure. That same day, the court heard argument and stated that plaintiff could avoid the imposition of sanctions by appearing with his wife for depositions on July 26. As a result, the plenary hearing, which was scheduled to begin on July 24 and continue on July 26, 27, and 28, had to be postponed.

On July 26, plaintiff and his wife were present for the depositions, but they refused to answer almost all of the questions presented to them at the direction of plaintiff's counsel. The questions plaintiff and his spouse refused to answer included such simple and direct inquiries as:

> Do you disagree with the decision not to permit your children to re[-]enroll at [STS] for this September?
>
> Do you think the defendants have asserted incorrect reasons for not permitting your children to re[-]enroll at [STS]?
>
> Do you have any basis to dispute that the decision not to permit your children to re[-]enroll at [STS] is an ecclesiastical one?
>
> Do you think that as a private institution [STS] doesn't have a right to decide not to accept your business for next school year?
>
> Do you have an understanding as to why the Archdiocese and [STS] made the determination not to permit your children to re[-]enroll in the school?

 A-4687-17T1

Defendants renewed their request for sanctions, and the court conducted oral argument on July 27 and 28, 2017. Plaintiff's attorney asserted that she believed the deposition was limited to information contained in five certifications defendants had submitted from witnesses setting forth the school's reasons for the decision not to enroll S.P. and K.P. in STS for the upcoming academic year. However, Judge Kessler found that he had never issued an order that limited the scope of the depositions in this fashion. The judge pointed out that plaintiff's wife had alleged that defendants had acted in bad faith and that their explanations for the enrollment decision were a "smokescreen." Under these circumstances, the judge observed that defendants had "a right to inquire about the evidence which [would] be presented against them with a good faith issue."

In deciding to grant defendants' motion for sanctions, Judge Kessler noted that he could have immediately imposed sanctions when plaintiff and his wife

> made the unilateral decision without the authority of the court to choose not to show up to the [July 19, 2017] deposition . . . for the stated reason that they intended to file an application for leave to appeal. However, they didn't appear at the deposition, and no such application has been filed up to today.

Those sanctions could have included the dismissal of plaintiff's complaint or the striking of plaintiff's and his wife's testimony. Instead, the judge gave plaintiff

13

and his wife the opportunity to avoid sanctions by attending the rescheduled deposition on July 26.

On that date, however, plaintiff and his wife refused to respond to the majority of questions posed by defendants' attorney. Judge Kessler reiterated that "there is not one single order in which I limited what could be asked at depositions. Therefore, the instruction to not answer the question is a violation of the rules. And the decision by the deponent not to answer the question is a violation of the rules."

In deciding the appropriate sanction under these circumstances, Judge Kessler explained:

> The court believes in this case it would have the authority, if it so chose, to dismiss the plaintiff's case. It would also have the authority to bar the testimony of the plaintiff and [his wife]. And the reason it would have that authority is in reviewing the depositions, there were basic questions that were relating to the plaintiff's case that were not answered, without any order which would so authorize them to do so. And it went well beyond the spirit of the rules.
>
> However, this court in the context of this case is reluctant to refuse to hear any part of the . . . plaintiff's case, even though it would well be justified to do so. The court, however, will impose sanctions. The failure to answer questions is a violation of the rules. The failure to do so was done by the plaintiff . . . .

14

Accordingly, the judge ordered plaintiff to pay defendants' counsel fees and costs for the July 26 deposition, and for a new deposition to be held on July 31, 2017, together with defendants' fees and costs for the oral argument on the motion for sanctions.

Following the conclusion of the plenary hearing, plaintiff filed a motion for reconsideration of the sanctions order, and sought an order sanctioning defendants for allegedly failing to provide complete discovery prior to the hearing. Judge Kessler conducted oral argument on January 19, 2018 and, in a thorough oral decision rendered on that date, he denied both motions.

In addressing the imposition of sanctions upon plaintiff, the judge reiterated his reasons for requiring plaintiff to pay defendants' attorney's fees:

> [T]here were . . . a number of applications, there were a number of court orders on depositions. I could have entered a more extreme sanction in either case. I could have taken the extreme step of striking their testimony, or striking the plaintiff's case. I didn't do that. But there has to be [a] consequence.
>
> . . . .
>
> And I guess one other thing I should address with respect to the sanction, . . . I have every authority to sanction a witness who doesn't respond to it. I could have sanctioned [plaintiff's wife]. I have every authority to sanction a lawyer who obstructs a deposition. I could have sanctioned [plaintiff's attorney].

You know, my belief was that there was an ongoing course of conduct in this case by the plaintiff, and this was consistent with that ongoing course of conduct. And I decided that [plaintiff is] responsible for the con[duct] of this trial and the legal positions taken. And all I can say is the question is, who's responsible for the extra cost that the [A]rchdiocese had to incur in order to redo this? And my view was that the plaintiff should bear that.

Judge Kessler reviewed the documentation submitted by defendants' attorneys concerning their fees for the depositions and awarded defendants $16,516.67 in attorney's fees and costs.

The judge also found that plaintiff's motion for sanctions against defendants was untimely. Judge Kessler reminded plaintiff that he had addressed plaintiff's discovery motions, which were often made orally, as they arose prior to the hearing. During these motions, plaintiff had not sought the imposition of sanctions. Thus, the judge concluded that plaintiff had not established any basis for sanctioning defendants now that the litigation had been completed.

On appeal, plaintiff raises the same arguments that he unsuccessfully pressed before Judge Kessler. We are satisfied that plaintiff's contentions lack merit and we affirm the imposition of sanctions and the denial of plaintiff's

request for sanctions substantially for the reasons set forth by Judge Kessler in his thoughtful oral decisions. We add the following comments.

Rule 4:23-2(b) allows the court to impose sanctions for violations of discovery orders. It provides that if a party or an "authorized agent of a party . . . fails to obey an order to provide or permit discovery, . . . the court . . . may make such orders in regard to the failure as are just[.]" R. 4:23-2(b). Accordingly, a court may execute

(1) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(2) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting the introduction of designated matters in evidence;

(3) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed or dismissing the action or proceeding or any part thereof with or without prejudice, or rendering a judgment by default against the disobedient party;

(4) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders.

In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order to pay the reasonable expenses,

17

including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

[R. 4:23-2(b).]

Trial courts have "wide discretion in deciding the appropriate sanctions for a breach of discovery rules," however, "the sanction must be just and reasonable." Conrad v. Robbi, 341 N.J. Super. 424, 441 (App. Div. 2001) (citing R. 4:23). The Supreme Court has explained that, along with dismissal, trial courts have other discovery sanctions available to them, "such as orders to compel, the award of reasonable expenses incurred in obtaining the [discovery], and counsel fees." Casinelli v. Manglapus, 181 N.J. 354, 365 (2004) (citing R. 4:23-1 to R. 4:23-5). "In each case, the court should assess the facts, including the willfulness of the violation, the ability of plaintiff to produce the [discovery], the proximity of trial, and prejudice to the adversary, and apply the appropriate remedy." Ibid. This methodology allows judges exercise their "discretion to choose a response that is proportionate to the procedural stimulus; saves for trial the meritorious claims of truly injured victims; and allows dismissal of cases in which a plaintiff cannot or will not supply a certification or in which a plaintiff's conduct has irremediably prejudiced the defendant." Ibid.

We review the trial court's imposition of sanctions for discovery misconduct to determine whether it abused its discretion. Abtrax Pharms, Inc. v. Elkins-Sinn, Inc., 139 N.J. 499, 517 (1995). "This deferential approach 'cautions appellate courts not to interfere unless an injustice appears to have been done.'" Quail v. Shop-Rite Supermarkets, Inc., 455 N.J. Super. 118, 133 (App. Div. 2018) (quoting Abtrax, 139 N.J. at 517).

Applying these principles to the circumstances of this case, we conclude that Judge Kessler properly exercised his discretion to impose monetary sanctions in the form of counsel fees and costs after plaintiff and his wife failed to appear at one deposition, and then declined to answer most of the questions at the second deposition. In imposing the sanction upon plaintiff, the judge recognized that plaintiff appeared to rely upon his attorney's direction at the second deposition, which might have justified placing the sanction upon the attorney rather than plaintiff. However, the judge observed that plaintiff had engaged in a course of litigation conduct that caused two depositions and the plenary hearing to be postponed and, as a result, plaintiff should be held responsible for that conduct. We detect no abuse of discretion in the judge's resolution of this issue.

Defendants' attorney's fee request was fully documented and the judge thoroughly explained how he determined the amount of the sanction. We are satisfied that the award was reasonable under the circumstances.

Finally, we discern no basis for disturbing the judge's denial of plaintiff's post-decision request for sanctions. Plaintiff failed to show that any of the alleged discovery deficiencies by defendants would have altered the court's decision regarding the expulsion hearing. See Mohamed v. Inglesia Evangelica Oasis de Salvacion, 424 N.J. Super. 489, 498 (App. Div. 2012) (finding that although discovery was not yet complete, any additional discovery would not "reveal any significant facts which would bear on its decision" with respect to a summary judgment motion); Minoia v. Kushner, 365 N.J. Super. 304, 307 (App. Div. 2004) (stating that although the court ordinarily waits to decide "until completion of discovery, nevertheless, discovery need not be undertaken or completed if it will patently not change the outcome"). Moreover, plaintiff never sought sanctions prior to the hearing to compel discovery. Therefore, plaintiff's contentions on this point also lack merit.

Dismissed in part; and affirmed in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4687-17T1