**Theodore BARSZCZEWSKI, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (PATHMARK STORES, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 27, 2004.

Decided Oct. 18, 2004.

Michael F. Hagstotz, Newtown, for petitioner.

Martha J. Guhl, Philadelphia, for respondent.

BEFORE: McGINLEY, Judge, and LEADBETTER, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Theodore Barszczewski (Claimant) petitions for review of the order of the Workers' Compensation Appeal Board (Board) affirming the order of a workers' compen-

---

sation judge (WCJ) which denied Claimant's petition to review compensation benefits pursuant to the provisions of the Pennsylvania Workers' Compensation Act (Act).[1] We affirm.

On May 14, 1999, Claimant sustained an injury in the nature of a tear of the medial meniscus when his right knee buckled while in the course and scope of his employment as a grocery clerk for Pathmark Stores, Inc. (Employer). On April 24, 2000, Claimant filed a claim petition for compensation benefits based on his work-related injury. Employer did not file an answer to the claim petition. The matter was assigned to a WCJ, and a hearing before the WCJ was scheduled. Claimant and his counsel appeared at the scheduled hearing, but neither counsel nor a representative for Employer was present.

Following the hearing, on May 31, 2000, the WCJ issued a decision disposing of Claimant's claim petition in which she made the following relevant findings of fact based upon Claimant's testimony at the hearing: (1) on May 14, 1999, Claimant sustained the tear of the medial meniscus when his right knee buckled while pulling a pallet of canned foods across the floor; (2) at the time of his injury, Claimant was earning $15.40 per hour for an average weekly wage of $616.00 per week; (3) Claimant gave verbal notice of the injury to the night crew chief; (4) Claimant sought medical treatment for his work-related injury; and (5) Claimant returned to work with residual disability reflected in a loss of earning power. *See* WCJ Decision 5/31/00 [2] at 1. Based on the foregoing,

the WCJ issued an order granting Claimant's claim petition, and awarding Claimant partial disability benefits. *See Id.* at 2. Neither Claimant nor Employer appealed the WCJ's decision to the Board.

On August 24, 2000, Claimant filed a petition for penalties in which he alleged, *inter alia,* that Employer had failed to pay partial compensation benefits as directed in the foregoing WCJ decision. On November 10, 2000, Claimant filed a petition to reinstate compensation benefits in which he alleged, *inter alia,* that his work-related injury had worsened, and that he was no longer able to work in any capacity. Both of the petitions were assigned to a WCJ for disposition, and hearings before the WCJ ensued.

On March 21, 2002, by agreement of the parties at a hearing before the WCJ, the penalty and reinstatement petitions were amended to a petition to seek approval of a compromise and release agreement under the provisions of Section 449 of the Act.[3] At the hearing, the Claimant testified in support of the petition to seek approval of the agreement, and stated that he understood the legal significance of the agreement. The agreement stated, in pertinent part, that Claimant had a time-of-injury average weekly wage of $616.00, and that he would receive a lump sum payment, based on this average weekly wage, as a settlement for his compensation benefits in addition to his out-of-pocket medical expenses. The WCJ adopted the agreement that had been submitted as the findings of fact.[4] In a decision dated March 25, 2002,

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4; 2501–2626.

2. "WCJ Decision 5/31/00" refers to the WCJ's decision issued on May 31, 2000.

3. Section 449 of the Act provides, in pertinent part, that "[n]othing in this act shall impair

the right of the parties interested to compromise and release, subject to the provisions herein contained, any and all liability which is claimed to exist under this act on account of injury or death." 77 P.S. § 1000.5(a).

4. Specifically, the order approving the agreement stated, in pertinent part, that "[C]laim-

the WCJ issued an order granting the petition to seek approval of the agreement, and directing Employer to make payment as directed in the agreement. *See* WCJ Decision 3/25/02 [5] at 1.

On July 18, 2002, Claimant filed a petition to review compensation benefits in which he alleged, *inter alia*, that the average weekly wage of $616.00 was incorrect, and he requested that the mathematical error that was committed in the original decision be corrected to reflect an average weekly wage of $830.00. On July 22, 2002, Employer filed an answer denying all of the material allegations raised in the petition, and hearings before the WCJ ensued.[6]

On April 10, 2003, the WCJ issued a decision disposing of Claimant's petition in which he made the following relevant findings of fact:

> 19. Claimant had at least four opportunities to advise the Court that he believed that his average weekly wages were incorrect: once at the hearing held by [the WCJ considering his claim petition], once at the testimony presented before [the WCJ considering the petition to seek approval of the compromise and release agreement], and once each in an appeal of each WCJ's decision. Claimant has not availed himself of any of these opportunities.

ant's entitlement to indemnity and medical benefits relating to the work injury is SETTLED and RELEASED according to the terms outlined in the Agreement." Reproduced Record (R.R.) at 22a.

**5.** "WCJ Decision 3/25/02" refers the WCJ's decision issued on March 25, 2002.

**6.** At the hearing before the WCJ on September 10, 2002, Employer interposed a motion to dismiss the petition, *ab initio*, on the basis that the issue of correcting the average weekly wage was no longer reviewable based on the petition's untimely filing and on the doctrine of *res judicata*. The parties agreed to

> 20. The issue of Claimant's average weekly wage has been determined by two other [WCJs] to be $616.00 per week, yielding a compensation rate of $410.66.
>
> 21. Claimant has not presented any evidence upon which this Court, or any other Court could determine that his average weekly wage was anything other than $616.00 per week.

WCJ Decision 4/10/03 [7] at 3.

Based on the foregoing, the WCJ concluded, *inter alia*, that "[b]ecause the subject matter of Claimant's Review Petition has already been judicially determined by two prior unappealed decisions, the matter is *res judicata* and the Claimant's Petition must be dismissed." *Id.* As a result, the WCJ issued an order denying Claimant review petition. *Id.* at 4.

On April 22, 2003, Claimant appealed the WCJ's decision to the Board. On March 9, 2004, the Board issued an opinion and order affirming the WCJ's decision. Claimant then filed the instant petition for review.[8]

In this appeal, Claimant contends that the Board erred in affirming the WCJ's decision denying his review petition. Specifically, Claimant asserts: (1) that the WCJ erred in his application of the doc-

bifurcate the timeliness and *res judicata* issues, and these were the bases upon which the WCJ proceeded.

**7.** "WCJ Decision 4/10/03" refers the WCJ's decision issued on April 10, 2003.

**8.** This Court's scope of review is limited to determining whether there has been a violation of constitutional rights, errors of law committed, or a violation of appeal board procedures, and whether necessary findings of fact are supported by substantial evidence. *Lehigh County Vo–Tech School v. Workmen's Compensation Appeal Board (Wolfe)*, 539 Pa. 322, 652 A.2d 797 (1995).

trine of *res judicata;* and (2) that he is entitled to have the compromise and release agreement set aside based upon a mutual mistake of fact with respect to his average weekly wage.

As this Court has previously noted, "[w]e believe that the legislature intended that a [workers' compensation compromise and release agreement] should be on equal footing with civil settlements, which are based on a public policy that encourages settlements and stresses finality." *Stroehmann Bakeries, Inc. v. Workers' Compensation Appeal Board (Plouse),* 768 A.2d 1193, 1196 (Pa.Cmwlth.2001) (citation omitted). Thus, this Court has also noted:

> The WCJ's inherent power to set aside compromise and release agreements derives from and is comparable to that possessed by the courts. Prior to the enactment of the Act, workers' compensation claims were handled as common law tort actions. At common law, a compromise and release agreement can be set aside upon a clear showing of fraud, deception, duress or mutual mistake. The party seeking to set aside such an agreement bears the burden of proof. We see no reason why the test for setting aside releases at common law should not be applied to workers' compensation cases.

\* \* \*

Compared to fraud, deception or duress, the test to set aside a compromise and release on the basis of mistake is more stringent. Pennsylvania courts have long held that underestimating damages or entering into a settlement before damages are adequately assessed is not a mutual mistake of fact. . . .

*North Penn Sanitation, Inc. v. Workers' Compensation Appeal Board (Dillard),* 850 A.2d 795, 799 (Pa.Cmwlth.2004) (citations omitted).[9]

Thus, even if it is assumed that both the WCJ and the Board misapplied the doctrine of *res judicata* in this case, it is clear that Claimant could not seek rescission of the compromise and release agreement on the basis that the parties underestimated the "damages", *i.e.* the compensation benefits, to which he was entitled at the time of its execution. In short, we discern no error in the Board's affirmance of the WCJ's decision in this case.

Accordingly, the order of the Board is affirmed.

### ORDER

AND NOW, this 18th day of October, 2004, the order of the Workers' Compensation Appeal Board, dated March 9, 2004 at No. A03–1089, is AFFIRMED.

---

**9.** *See also Buttermore v. Aliquippa Hospital,* 522 Pa. 325, 329, 561 A.2d 733, 735 (1989) ("[I]f such a release can be nullified or circumvented, then every written release and every written contract or agreement of any kind no matter how clear and pertinent and all-inclusive, can be set aside whenever one of the parties has a change of mind or whenever there subsequently occurs a change of circumstances which were unforeseen, or there were after-discovered injuries, or the magnitude of a releasor's injuries was unexpectedly increased, or plaintiff made an inadequate settlement. It would make a mockery of the English language and of the law to permit this release to be circumvented or held to be nugatory.") (citation omitted); *Felix v. Giuseppe Kitchens & Baths, Inc.,* 848 A.2d 943, 949 (Pa.Super.2004) ("[U]nderestimating the amount of damages ... or making a settlement before damages are accurately ascertained does not constitute a mutual mistake. *Leyda v. Norelli,* [387 Pa.Super. 411, 564 A.2d 244, 245] (1989).").