Rita FARNER, Petitioner,

v.

**WORKERS' COMPENSATION AP-
PEAL BOARD (ROCKWELL IN-
TERNATIONAL), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Dec. 10, 2004.

Decided Feb. 9, 2005.

Reargument Denied April 12, 2005.

Gary D. Monaghan, Uniontown, for peti-
tioner.

John B. Bechtol, Pittsburgh, for respon-
dent.

BEFORE: FRIEDMAN, Judge, and SIMPSON, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge SIMPSON.

Rita Farner (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) which declined to set aside a Compromise and Release Agreement (C & R Agreement). The sole issue on appeal is whether Claimant's mistake provides a sufficient basis to set aside the C & R Agreement. Concluding it does not, we affirm.

In August 1988, Claimant suffered a work-related fractured left arm for which Rockwell International Corp. (Employer) issued a Notice of Compensation Payable. WCJ's Op. of 2/22/99, Finding of Fact (F.F.) No. 1.

Approximately eleven years later, Employer filed a modification petition, alleging Claimant failed to pursue available work in good faith. Hearings ensued.

During the modification proceedings before a Workers' Compensation Judge (WCJ), the parties and their lawyers presented the C & R Agreement and Stipulations for approval. The C & R Agreement indicated Claimant received a total of $220,905.30 in weekly disability benefit payments and an additional $21,183.56 in medical benefits. Employer agreed to a resolution of the modification petition if Claimant agreed to release all claims related to her work injury in exchange for an additional lump sum payment of $45,000.00. Hearing of 9/4/03, Claimant's Exhibit 1.

At a hearing to approve the Agreement (Approval Hearing), Claimant responded to questions from her attorney as to her understanding of the C & R Agreement. Especially material for current purposes, Claimant testified that in addition to waiving all workers' compensation benefits, she resigned her employment. Reproduced Record (R.R.) at 30a. She testified that she would still be entitled to receive her pension from Employer and to receive medical benefits under Employer's plan. *Id.* No further information on this point was offered. However, in a written Voluntary Resignation Statement dated the day of the Approval Hearing and received during subsequent proceedings, Claimant explained, "I fully realize that with this resignation, I am no longer entitled to any of the privileges or benefits to which employees of [Employer] may be entitled except those benefits and rights which are vested at the time of my resignation." R.R. at 20a.

Finding Claimant fully understood the legal significance of the C & R Agreement, the WCJ approved it. Neither party appealed.

Nearly a year and half later, Claimant's new lawyer filed a review petition alleging Employer breached the C & R Agreement by failing to pay her medical insurance premiums following the WCJ's approval of the Agreement. WCJ's Op. of 9/4/03, F.F. No. 3. Employer filed a timely answer maintaining the C & R Agreement did not provide for ongoing medical insurance.

At a hearing before a different WCJ on Claimant's review petition, Claimant testified that when she settled her case, her former attorney assured her she would continue to receive health care benefits through Employer's plan. WCJ's Op. of 9/4/03, F.F. No. 7. Importantly, Claimant did not testify that any representative of Employer discussed this aspect of the settlement with her. Also, Claimant offered copies of the C & R Agreement and Stipulations into evidence.

Thereafter, Employer offered Claimant's Voluntary Resignation Statement.

No testimony by a representative of Employer was received.[1]

The WCJ set aside the C & R Agreement. In doing so, the WCJ found that the documents did not expressly state that the Claimant would or would not be entitled to ongoing medical insurance coverage. WCJ Op. of 9/4/03, F.F. Nos. 8, 9, 10. He also made the following relevant findings:

11. Based upon my review and consideration of the claimant's testimony at the February 4, 1999 hearing, and her testimony at the October 29, 2001 hearing, I find that at the time she executed the Compromise and Release Agreement and requested approval of that agreement in February, 1999, *it was the understanding of the claimant, Rita Farner, that her medical insurance coverage through United Health Care was going to continue.*

I further find the fact that none of the attorneys present at the February 4, 1999 hearing indicated on the record at the February 4, 1999 hearing that the claimant had an erroneous understanding concerning her entitlement to ongoing medical insurance coverage, contributed to the claimant's belief that she was going to continue to receive ongoing medical insurance coverage through United Health Care.

. . .

12. Based upon my review and consideration of all of the evidence and arguments presented in this matter, *I find that the claimant, Rita Farner, had a mistaken understanding as to whether her medical insurance coverage with United Health Care was going to continue following the approval of the Compromise and Release Agreement the* parties entered into on February 4, 1999. I further find, given the claimant's testimony at the hearing of October 29, 2001 and given the filing of her Review Petition, that it was important to the claimant that her medical insurance continue, and that she would not have entered into the Compromise and Release Agreement if she knew that her medical coverage was going to cease. I thus find that there was a clear misunderstanding/mistake pertaining to a material issue at the time the parties executed the Compromise and Release Agreement of February 4, 1999, and at the time they asked for it to be approved. As such, the Compromise and Release Agreement must be set aside.

WCJ's Op. of 9/4/03, F.F. Nos. 11, 12 (emphasis added).

■ Employer appealed to the Board, which reversed, holding the WCJ erred in setting aside the C & R Agreement. The Board reasoned that Claimant genuinely misunderstood the Agreement, but it noted her written acknowledgement in the Voluntary Resignation Statement. Board Op. at 5, 6. The Board concluded Claimant's misunderstanding was a unilateral mistake insufficient to set aside the C & R Agreement. Board Op. at 6. This appeal followed.[2]

On appeal, Claimant argues the Board erred because she established the Agreement was materially incorrect. She also

---

1. At one point, Employer offered an affidavit from an out-of-state representative of Employer, but Claimant's hearsay objection was sustained.

2. Our review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence or whether constitutional rights were violated. *Johnson v. Workers' Comp. Appeal Bd. (Abington Mem'l Hosp.),* 816 A.2d 1262 (Pa.Cmwlth.2003).

relies on the doctrine of mistake. In particular, she contends that Employer was aware of her mistake at the time she signed the C & R Agreement but did nothing to dispel her misunderstanding. She further claims Employer's silence at the Approval Hearing proves mutual mistake.

■ Section 449 of the Workers' Compensation (Act),[3] 77 P.S. § 1000.5, governs the compromise and release of workers' compensation claims. This section provides that settlement agreements are not valid or binding until approved by a WCJ. *Id.* Further, "[t]he [WCJ] shall not approve any compromise and release agreement unless he first determines that the claimant understands the full legal significance of the agreement." 77 P.S. § 1000.5(b). Once approved, a valid compromise and release agreement is final and binding on the parties. *Pimentel v. Workers' Comp. Appeal Bd. (United Neighborhood Ctrs. of Lackawanna County)*, 845 A.2d 234 (Pa.Cmwlth.2004).

Over the past year this Court dealt with several attempts to set aside C & R agreements. Two different analyses emerged. First, the Court utilized a common law standard for setting aside a C & R agreement, so that such an agreement can be set aside only upon a clear showing of fraud, deception, duress or mutual mistake. *N. Penn Sanitation, Inc. v. Workers' Comp. Appeal Bd. (Dillard)*, 850 A.2d 795 (Pa.Cmwlth.2004).[4]

■ More recently, the Court expressed the view that the unappealed approval of a C & R agreement precludes re-litigation of the required finding that the claimant un-

derstood the full legal significance of the agreement. *Stiles v. Workers' Comp. Appeal Bd. (Dep't of Pub. Welfare)*, 853 A.2d 1119 (Pa.Cmwlth.2004)(*en banc*), *appeal denied*, —— Pa. ——, —— A.2d ——, 2005 WL 562498 (426 WAL 2004, filed December 16, 2004). *See also N. Penn Sanitation* (concurring opinion, Leadbetter, J.). Under a collateral estoppel analysis, a party is foreclosed from re-litigating an issue of law or fact when the following factors are demonstrated: (1) the legal or factual issues are identical; (2) they were actually litigated; (3) they were essential to the judgment; and (4) they were material to the adjudication. *Stiles.* As this more recent analysis was adopted by the majority of an *en banc* panel of this Court, we will apply it here.

■ Applying the collateral estoppel analysis, there is no question that all necessary elements for preclusion are present. The factual issue raised here, mistake as to understanding the full legal significance of the Agreement, was decided in the earlier litigation. The issue was actually litigated, it was essential to approval of the C & R Agreement, and it was material to the approval of the Agreement.

Claimant argues that she is entitled to relief under the doctrine of mutual mistake. However, even if she could re-litigate her understanding of the Agreement, Claimant would not prevail on this theory.

Compared to fraud, deception or duress, the test to set aside a C & R agreement on the basis of mutual mistake is more stringent. *N. Penn Sanitation.* Thus, in order for mutual mistake to con-

3. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 1000.5, *added by* the Act of July 2, 1993, P.L. 190.

4. *See also Barszczewski v. Workers' Comp. Appeal Bd. (Pathmark Stores, Inc.)*, 860 A.2d 224 (Pa.Cmwlth.2004)(need not decide whether *res judicata* properly applied because underestimating damages does not amount to mutual mistake).

stitute a basis for invalidating a C & R agreement, the party seeking to set aside the agreement must prove both parties are mistaken as to a present, material fact that existed at the time the agreement was executed. *Id.*

■ Here, Claimant proved that she signed the C & R Agreement while under a mistake as to Employer's duty to continue paying medical insurance premiums after her resignation. However, the WCJ made no finding that Employer shared that mistake at the critical time. Given that no Employer witness testified, this lack of finding concerning Employer's state of mind is not surprising. The absence of any finding as to Employer's state of mind results in the conclusion that Claimant failed to prove mutual mistake.[5]

■ Claimant raises several interesting arguments inviting a re-weighing of the circumstantial evidence so as to support an inference of Employer's knowledge. However, arguments as to the weight of evidence are for the fact-finder, not this Court. *Universal Cyclops Steel Corp. v. Workmen's Comp. Appeal Bd. (Krawczynski),* 9 Pa.Cmwlth. 176, 305 A.2d 757 (1973).

Also noteworthy are the WCJ's findings that the documents do not expressly state that the Claimant would or would not be entitled to ongoing medical insurance coverage after her resignation. Significantly, there was no finding that the C & R Agreement promised continued payment of the medical insurance premium, and there was no conclusion of law that Employer breached the C & R Agreement. Moreover, there was no effort by Claimant to prove that medical insurance coverage was a vested benefit, the continuation of which was memorialized in her Voluntary Resignation Statement.

Finally, we reject Claimant's arguments that her review petition should be granted. Section 413(a) of the Act, 77 P.S. § 771, permits a WCJ to review an original or supplemental agreement if it be proved that it was in any material respect incorrect.[6] However, in the absence of a finding that the C & R Agreement was incorrect when executed and that the parties intended different terms, Claimant here cannot obtain the relief she seeks under this theory.

Given the foregoing discussion, we affirm.

---

**5.** Claimant also argues she is entitled to relief under the doctrine of unilateral mistake. We disagree on legal and factual grounds. Legally, collateral estoppel applies and precludes re-litigation of the prior finding that Claimant understood the full legal significance of the C & R Agreement. Factually, unilateral mistake supporting relief was not proven. Generally, a unilateral mistake which is not caused by the fault of the opposing party affords no basis for relief. *Welsh v. State Employees' Retirement Bd.,* 808 A.2d 261 (Pa.Cmwlth. 2002). However, "[i]f a party to a contract knows or has reason to know of a unilateral mistake by the other party and the mistake, as well as the actual intent of the parties, is clearly shown, relief will be granted to the same extent as if a mutual mistake existed."

*Id.* at 265. *See also Growth Horizons, Inc., v. Workers' Compensation Appeal Bd. (Hall),* 767 A.2d 619 (Pa.Cmwlth.2001). Claimant here failed to present any evidence of Employer's intent, and the WCJ made no finding as to Employer's intent. Without supporting evidence and a finding of actual intent, it is impossible for Claimant to carry her burden under the doctrine of unilateral mistake.

**6.** *Cf. Wallace v. Workers' Comp. Appeal Bd. (Bethlehem Steel),* 854 A.2d 613, 620 at n. 10 (Pa.Cmwlth.2004)(using Section 413(a) review to resolve ambiguity in scope of C & R agreement). *But see N. Penn Sanitation* (Section 413(a) does not authorize setting aside a C & R agreement).

*ORDER*

AND NOW, this 9th day of February, 2005, the order of the Workers' Compensation Appeal Board is **AFFIRMED.**

DISSENTING OPINION BY Judge FRIEDMAN.

I respectfully dissent. Unlike the majority, I do not believe that the doctrine of collateral estoppel applies to bar Rita Farner's (Claimant) petition to set aside the Compromise and Release Agreement by Stipulation (C & R Agreement) between Claimant and Rockwell International (Employer). In addition, I agree with Workers' Compensation Judge Anne Colohan (WCJ Colohan) that Claimant provided a sufficient basis to set aside the C & R Agreement on grounds of mistake. Most important, I believe that, in reversing WCJ Colohan's decision, the Workers' Compensation Appeal Board (WCAB) impermissibly reweighed the evidence and ignored WCJ Colohan's findings of fact, which are supported by substantial evidence in the record and, thus, binding on the WCAB and this court on appeal.

From the date of her August 1988 work-related injury through the settlement of her workers' compensation case in February 1999, Claimant was receiving health care coverage provided by Employer through United Health Care. At a February 9, 1999, hearing, the parties and their attorneys presented the C & R Agreement to WCJ Irving Bloom (WCJ Bloom) for approval pursuant to section 449 of the Workers' Compensation Act (Act).[1] At the approval hearing, Claimant responded to questions from her attorney as to her understanding of the C & R Agreement. Claimant testified that, in exchange for a lump sum payment of $45,000, she was waiving all future workers' compensation benefits and would resign her employment. *Claimant also testified that she understood that she would continue to receive her social security, her pension benefits and the health care benefits provided by Employer through United Health Care.* (Hearing of 2/4/99, N.T. at 10, R.R. at 30A.)

Following her testimony, WCJ Bloom questioned Claimant briefly, affirming that Claimant could read the C & R Agreement and that she went over it thoroughly with her attorney. Given the opportunity to cross-examine Claimant, Employer's counsel asked Claimant only two questions: whether she understood that she would receive no further workers' compensation benefits after signing the C & R Agreement; and whether she was under the influence of anything that would impair her ability to review the documents or testify. (Hearing of 2/4/99, N.T. at 11–12, R.R. at 31A–32A.)

Crediting Claimant's testimony, WCJ Bloom found that Claimant understood the full legal significance of the C & R Agreement which she signed, and he approved the C & R Agreement by order dated February 22, 1999. Neither party appealed.

Although Claimant's settlement occurred in February 1999, her United Health Care benefits were not cancelled until October 1999, and claims were paid

---

**1.** Act of June 2, 1915, P.L. 736, *as amended,* added by, Act of June 24, 1996, P.L. 350, 77 P.S. § 1000.5. Section 449, which governs the compromise and release of workers' compensation claims, provides that settlement agreements are not valid or binding until approved by a WCJ and, further, that the WCJ shall not approve any C & R agreement unless he first determines that the claimant understands the agreement's full legal significance. 77 P.S. § 1000.5(b).

after that date.[2] (Hearing of 10/29/01, N.T. at 11–12, RR at 44A–45A; WCJ Colohan's Findings of Fact, No. 11.) In July 2001, Claimant's new lawyer filed a review petition seeking to set aside the C & R Agreement, alleging that Employer had breached the C & R Agreement by failing to continue the agreed upon health care insurance. (R.R. at 1A–3A.) Employer filed a timely and responsive answer, and hearings on the matter were held before WCJ Colohan.

At the October 29, 2001, hearing before WCJ Colohan, Claimant verified the testimony she provided before WCJ Bloom concerning her understanding of the C & R Agreement, stating that before she settled her case, her former attorney assured her she would continue to receive health care benefits through United Health Care. Claimant also said that United Health Care had paid one of her medical claims as late as December 1999. (WCJ Colohan's Findings of Fact, No. 7.) Claimant offered copies of the C & R Agreement into evidence.[3] (R.R. at 7A–11A.) At the end of the hearing, Employer also submitted into evidence a resignation statement signed by Claimant, which stated "I fully realize that

with this resignation, I am no longer entitled to any of the privileges or benefits to which employees of [Employer] may be entitled except those benefits and rights which are vested at the time of my resignation." (R.R. at 20a.) The resignation statement was dated the same day as the approval hearing before WCJ Bloom but was not received by WCJ Bloom during those proceedings.

Crediting Claimant's testimony and considering the evidence, WCJ Colohan set aside the C & R Agreement, specifically finding that: (a) neither the C & R Agreement nor the resignation statement expressly state whether Claimant would or would not be entitled to ongoing medical health insurance coverage through United Health Care; (b) Claimant believed her health care coverage would continue after the C & R Agreement took effect; (c) the silence of Employer's attorney and the temporary continuation of coverage contributed to this understanding; and (d) Claimant would not have entered into the C & R Agreement if she understood that it meant her health care benefits would be discontinued.[4] (WCJ Colohan's Findings

2. Thus, Claimant first became aware of her misunderstanding of the C & R Agreement well after the appeal period expired.

3. In paragraph 13 of the C & R Agreement, Claimant was asked to list any benefits being received by her or available to her. Claimant lists: social security disability of $940 per month; retirement pension of $377.20 per month; and private health insurance from United Health Care. (R.R. at 10A.)

4. In her September 4, 2003, decision, WCJ Colohan made the following relevant findings:
   8. The claimant submitted into the record a copy of the Compromise and Release Agreement and Stipulation the parties executed on February 4, 1999.
   The undersigned has carefully reviewed these documents and has found that *neither of these documents expressly state [sic] that the claimant would or would not be entitled*

*to ongoing medical insurance coverage through United Health Care* if the Compromise and Release were approved.
9. The Employer, Rockwell International, submitted a copy of the claimant's resignation statement of February 4, 1999 into the record.
The undersigned has also thoroughly reviewed this document and has found that *the resignation statement does not expressly state whether the claimant would or would not be entitled to ongoing medical insurance coverage through United Health Care.*
10. Although none of the documents the parties executed on February 4, 1999 expressly address [sic] the issue of whether or not the claimant's medical health care coverage was to continue through United Health Care, the claimant was asked specific questions concerning her understanding pertaining to the continuation of her medi-

of Fact, Nos. 8–12.) However, on appeal by Employer, the WCAB reversed. In doing so, the WCAB accepted that Claimant genuinely understood that she would continue to receive health insurance benefits under the C & R Agreement. Nevertheless, the WCAB concluded that "Claimant's voluntary resignation indicates that Claimant understood that she was no long-er entitled to benefits from her employment unless they were vested."[5] (WCAB op. at 5–6, R.R. at 89A–90A.) On this basis, the WCAB determined that Claimant's misunderstanding was a unilateral mistake insufficient to set aside the C & R Agreement.

In affirming the WCAB,[6] the majority employs two different analyses set forth in

cal health care coverage at the hearing conducted by Judge Bloom on February 4, 1999.

Specifically, during the hearing of February 4, 1999, the following exchange took place between the claimant and the attorney who was representing her in connection with the Compromise and Release Agreement.

Q. *You understand that even though you've resigned and even though you've resolved your Workers' Compensation claim, you're still entitled to receive your pension from Rockwell and get your health benefits under United Health Care?*

A. *Uh-huh (yes).*

Q. But you understand that if you go to any medical appointments for your arm or anything related to your Workers' Comp injury, that Workers' Comp is no longer responsible for paying those medical bills?

A. Right.

Q. Those will have to be filed under your United Health Care or Medicare; okay?

A. Uh-huh (yes.).

11. Based upon my review and consideration of the claimant's testimony at the February 4, 1999 hearing, and her testimony at the October 29, 2001 hearing, I find that at the time she executed the Compromise and Release Agreement and requested approval of that agreement in February, 1999, *it was the understanding of the claimant, Rita Farner, that her medical insurance coverage through United Health Care was going to continue.*

I further find *the fact that none of the attorneys present* at the February 4, 1999 hearing *indicated on the record* at the February 4, 1999 hearing *that the claimant had an erroneous understanding concerning her entitlement to ongoing medical insurance coverage, contributed to the claimant's belief* that she was going to continue to receive ongoing medical insurance coverage through United Health Care.

In addition, *I find that the fact that United Health Care actually continued to pay some of the claimant's medical claims through December, 1999, further contributed to the claimant's impression* that she was entitled to ongoing medical coverage through United Health Care.

12. Based upon my review and consideration of all of the evidence and arguments presented in this matter, *I find that the claimant, Rita Farner, had a mistaken understanding as to whether her medical insurance coverage with United Health Care was going to continue following the approval of the Compromise and Release Agreement* the parties entered into on February 4, 1999. *I further find,* given the claimant's testimony at the hearing of October 29, 2001 and given the filing of her Review Petition, that it was important to the claimant that her medical insurance continue, and *that she would not have entered into the Compromise and Release Agreement if she knew that her medical coverage was going to cease.* I thus find that there was a clear misunderstanding/mistake pertaining to a material issue at the time the parties executed the Compromise and Release Agreement of February 4, 1999 for it to be approved. As such, the Compromise and Release Agreement must be set aside.

(WCJ Colohan's Findings of Fact, Nos. 8–12) (emphasis added).

5. In response to questioning by Employer's counsel, Claimant stated that her attorney told her that her health care benefits were vested. (Hearing of 10/29/01, N.T. at 23, R.R. at 56A.)

6. Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law or whether necessary findings of fact are supported by substantial evidence.

recent case law: the common law standard for setting aside a C & R agreement based upon a clear showing of fraud, deception, duress or mutual mistake, *North Penn Sanitation Inc. v. Workers' Compensation Appeal Board (Dillard)*, 850 A.2d 795 (Pa. Cmwlth.2004); and the application of the doctrine of collateral estoppel to preclude re-litigation of the unappealed approval of a C & R agreement based upon a challenge of the required finding that the claimant understood the full legal significance of the agreement, *Stiles v. Workers' Compensation Appeal Board (Department of Public Welfare)*, 853 A.2d 1119 (Pa. Cmwlth.2004) (*en banc*), *appeal denied*, —— Pa. ——, 870 A.2d 325, 2005 WL 562498 (426 WAL 2004, filed December 16, 2004). I disagree with the majority in each case.

## Collateral Estoppel

Relying on *Stiles*, the majority first applies a collateral estoppel analysis to dispose of Claimant's appeal, determining that Claimant could not re-litigate the issue of her understanding of the C & R Agreement because "there is no question that all necessary elements for preclusion are present."[7] (Op. at 1078.)

In *Stiles*, this court held that a claimant seeking to review a C & R agreement on grounds that she did not fully understand its ramifications was precluded from doing so because the doctrine of collateral estoppel forecloses this relief to any such claimant as a matter of law by virtue of the very finding she seeks to have reviewed. As I stated in my dissent in *Stiles*, such a result is both absurd and unjust.

As in *Stiles*, Claimant's petition here actually is in the nature of a petition to set aside the C & R Agreement pursuant to section 413(a) of the Act, 77 P.S. § 771, which gives the WCJ authority to set aside an agreement of the parties "*if it be proved that such ... agreement was in any material respect incorrect.*" 77 P.S. § 771 (emphasis added). As in *Stiles*, the majority invokes the doctrine of collateral estoppel to *deny Claimant the opportunity to prove* that she *did not* understand the full legal significance of the C & R Agreement based solely on WCJ Bloom's finding that Claimant *did* understand that Agreement.[8]

---

Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

7. Collateral estoppel forecloses relitigation of an issue of law or fact that has been finally decided when the following factors are demonstrated: (1) the legal or factual issues are identical; (2) they were actually litigated; (3) they were essential to the judgment; and (4) they were material to the adjudication. *Yonkers v. Donora Borough*, 702 A.2d 618 (Pa. Cmwlth.1997). The party against whom the plea is asserted must have been a party, or in privity to a party, in the prior action and must have had a full and fair opportunity to litigate the issue in question. *Bortz v. Workmen's Compensation Appeal Board (Reznor Division of FL Industries)*, 546 Pa. 77, 683 A.2d 259 (1996).

8. In *Stiles*, this court reviewed the WCJ's decision to apply the doctrine of collateral estoppel to preclude the claimant from presenting evidence to prove that she did not understand the C & R agreement. In the present case, WCJ Colohan *did* consider the evidence presented by Claimant and found that Claimant successfully proved her lack of understanding of the C & R Agreement. In reviewing and reversing WCJ Colohan's decision, the WCAB did not overturn this finding but, instead, concluded that WCJ Colohan committed legal error in setting aside the C & R Agreement based on unilateral mistake. Now, rather than confine its analysis to a review of WCJ Colohan's findings and conclusions, the majority essentially rules that WCJ Colohan improperly allowed Claimant to present evidence of her understanding of the C & R Agreement in the first instance. I find this holding difficult to reconcile with *Dillard* (holding that, even after the appeal period has expired, a WCJ has the inherent power to set aside an approved C & R agree-

By so holding, I believe that the majority eliminates the possibility of relief which the legislature intended to provide through this section of the Act. Indeed, because a claimant seeking relief under section 413(a) of the Act, 77 P.S. § 771(a), is required to *prove* the existence of a material mistake of fact or law, it makes no sense to hold that a claimant is prevented from offering such proof by the very "fact" she has challenged.

*Stiles,* 853 A.2d at 1127, (Friedman, J., dissenting) (emphasis in original).

Moreover, I believe that the doctrine of collateral estoppel cannot be applied in this case because Claimant did not have a full and fair opportunity to litigate the issue of her understanding at the C & R Agreement approval hearing. In order to have effect, a C & R agreement must be approved by a WCJ after the WCJ considers the proposed agreement in open hearing. Before deciding whether to approve any C & R agreement, the WCJ must first determine that the claimant understands the full legal significance of that agreement. 77 P.S. § 1000.5(b). Thus, in the proceeding to approve the C & R Agreement here, WCJ Bloom had to determine, *based on the evidence presented at the C & R approval hearing,* whether Claimant understood the legal significance of the C & R Agreement she signed.

Significantly, the C & R Agreement itself did not expressly state whether Claimant would or would not remain entitled to ongoing medical insurance coverage. However, Claimant testified that she understood the terms of the C & R Agreement to *include* continuation of health care insurance, and WCJ Bloom made his finding that Claimant understood the full legal ramifications of the C & R Agreement based upon Claimant's credible, unrefuted testimony. Clearly, because WCJ Bloom was unaware of how the C & R Agreement actually was meant to deal with continuing medical insurance coverage for Claimant, it was impossible for him to know whether Claimant was mistaken in her belief. *See Dillard.*[9]

In the proceeding to determine whether the C & R Agreement should be set aside under section 413(a) of the Act, WCJ Colohan had to determine *based upon evidence presented at the set aside hearing,* whether Claimant's understanding at the time the C & R Agreement was executed constituted a *material* mistake of fact or law. *Russo v. Workers' Compensation Appeal Board (Mon/Val Resources, Inc.),* 755 A.2d 94 (Pa.Cmwlth.2000), *appeal denied,* 565 Pa. 658, 771 A.2d 1292 (2001); *Hartner v. Workmen's Compensation Appeal Board (Phillips Mine & Mill, Inc.),* 146 Pa. Cmwlth. 167, 604 A.2d 1204 (1992), *appeal denied,* 531 Pa. 662, 613 A.2d 1210 (1992). Because WCJ Colohan now had all the

---

ment under certain circumstances). As I stated in my dissent in *Stiles,* I believe that if the majority's collateral estoppel analysis had been applied in *Dillard,* the claimant there would have been precluded from challenging the WCJ's finding that he understood the terms of the C & R agreement, a result at odds with the humanitarian purpose of the Act.

9. In *Dillard,* this court affirmed the decision to set aside a C & R agreement. We noted that the claimant's work-related blindness

was not disclosed to the WCJ and that, in approving the parties' C & R agreement, the WCJ relied upon the representation that the claimant's injuries were fully disclosed, when they were not. We concluded that, *because the WCJ was unaware of the claimant's condition, it was impossible for the WCJ to ascertain whether the claimant understood the full legal significance of the agreement.* In rendering the decision, we stressed that the Act is remedial in nature and intended to be liberally construed in favor of an injured employee, i.e., to effectuate its humanitarian purpose.

necessary information regarding continuation of Claimant's medical insurance under the C & R Agreement, this would be the first time that issue would be fully and fairly litigated. For these reasons, I believe that the majority errs in affirming the WCAB based on collateral estoppel.[10]

### Evidence of Mistake

Relying on *Dillard*, the majority further concludes that, even if Claimant were allowed to re-litigate her understanding of the C & R Agreement, she would not prevail under the doctrine of mutual mistake. I strongly disagree.

Mutual mistake is found where both parties to an agreement are mistaken as to a present, material fact that existed at the time the agreement was executed. *Dil-*

*lard.* Alternatively, where one party charged with knowledge of the terms of an agreement [11] knows or has reason to know of a unilateral mistake by the other party, and the mistake, as well as the actual intent of the parties, is clearly shown, relief will be granted to the same extent as if a mutual mistake existed. *Welsh v. State Employees' Retirement Board,* 808 A.2d 261 (Pa.Cmwlth.2002); *see also Growth Horizons, Inc., v. Workers' Compensation Appeal Board (Hall),* 767 A.2d 619 (Pa. Cmwlth.2001). Here, it is perfectly clear to me, and the findings of WCJ Colohan reflect, that one of these scenarios must be true; that is precisely why WCJ Colohan set aside the C & R Agreement in this case.[12]

10. I note that Employer does not raise the issue of collateral estoppel in its answer to Claimant's review petition, before WCJ Bloom or on appeal to the WCAB. Nevertheless, the majority uses the collateral estoppel analysis as the primary basis to affirm the WCAB's reversal of WCJ Colohan's decision to re-visit WCJ Bloom's finding of fact and set aside the C & R Agreement. However, if the majority indeed is correct that collateral estoppel applies to preclude re-litigation of WCJ Bloom's finding, then I believe that the finding adversely affects Employer, not Claimant.

Claimant's full understanding on the record before WCJ Bloom is that Claimant would continue to be covered under Employer's health insurance plan, and when WCJ Bloom approved the C & R Agreement, he did so based on his finding that Claimant fully understood the legal significance of the C & R Agreement, *as reflected by the record.* Where, as here, the C & R Agreement itself does not provide differently, and where Employer did nothing on the record to disabuse Claimant or WCJ Bloom of Claimant's understanding, then, as a matter of law, Claimant's statement regarding continuing health insurance benefits was an accurate interpretation of the C & R Agreement. Thus, the C & R Agreement now must be construed to provide for the continuation of Claimant's medical insurance benefits, as reflected by WCJ Bloom's unappealed finding of fact, *Stiles,* and Employer should be precluded from asserting that the C

& R Agreement does not require continuing health care benefits for Claimant.

11. It is beyond dispute that counsel for an employer at a C & R agreement approval hearing can fairly be charged with knowledge of the terms that the employer intended to include in or exclude from the C & R agreement.

12. I am perplexed by the majority's statement rejecting WCJ Colohan's position. The majority states, "Claimant raises several interesting arguments inviting a re-weighing of the circumstantial evidence so as to support an inference of Employer's knowledge. However, arguments as to the weight of evidence are for the fact-finder, not this Court." (Majority op. at 8, citation omitted). With this statement, the majority ignores the fact that *WCJ Colohan, not the WCAB, is the fact-finder.* As stated, WCJ Colohan found that: (a) neither the C & R Agreement nor the resignation statement expressly state whether Claimant would or would not be entitled to ongoing medical health insurance coverage through United Health Care; (b) Claimant believed her health care coverage would continue after the C & R Agreement took effect; (c) the silence of Employer's attorney and the temporary continuation of coverage contributed to this understanding; and (d) Claimant would not have entered the C & R Agreement if she understood that it meant her health care ben-

As the majority concedes, Claimant proved that she signed the C & R Agreement under the belief that Employer would continue to pay her medical insurance premiums. In light of this fact, the silence of Employer's counsel at the approval hearing establishes that, at the critical time, either: (1) Claimant and Employer both were mistaken as to their understanding of the C & R Agreement; or (2) only Claimant was mistaken, and Employer knew or had very good reason to know of Claimant's mistake but did nothing to correct it. I cannot conceive of any other possibility, and, whichever is true, it amounts to mutual mistake under the case law.

Given the foregoing discussion, I would reverse and reinstate WCJ Colohan's order setting aside the C & R Agreement between Claimant and Employer.

efits would be discontinued. (WCJ Colohan's Findings of Fact, Nos. 8–12.) What the majority does here is to condone the impermissible behavior of the WCAB in re-weighing the evidence and reaching its own conclusion that the resignation statement indicates Claimant's true understanding concerning continuing health care benefits.