# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Diana McGinley, :
               Petitioner :
                :
      v. :
                :
Workers' Compensation Appeal :
Board (County of Delaware), : No. 1082 C.D. 2015
          Respondent : Submitted: February 12, 2016

BEFORE:    HONORABLE ROBERT SIMPSON, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI          FILED: March 7, 2016

        Diana McGinley (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) affirming the Workers' Compensation Judge's (WCJ) approval of a petition for a compromise and release agreement, claiming it is invalid under the doctrine of mistake. Finding that the WCJ's order is supported by substantial evidence, we affirm.

**I.**

Pursuant to the Workers' Compensation Act (Act),[1] Claimant filed a claim petition with regard to a work injury she sustained in July 2011 to her right shoulder, mid and low back, and left ankle as the result of a slip and fall.[2] The County of Delaware (Employer) filed an answer denying all material allegations. Subsequently, the claim petition was amended to a petition for approval of a compromise and release agreement (C&R Agreement or Agreement) pursuant to Section 449 of the Act, 77 P.S. §1000.5, which resolved Claimant's wage loss and medical benefits via a lump sum payment.

The C&R Agreement stated, in pertinent part:

> The Defendant/Employer is entering into this C&R Agreement without admission of liability. This C&R Agreement is being entered into, to resolve any and all issues concerning any injuries and/or claims the Claimant allegedly may have sustained on 7/22/2011 whether known or unknown, including any worsening and/or aggravation of the present conditions and any related injuries. This Compromise and Release Agreement resolves any and all injuries, and claims, whether currently known or unknown, which may have arisen or may arise out of the injury of 7/22/2011, including but not limited to specific loss, disfigurement and/or fatal claim. The Claimant further understands and agrees that this C&R Agreement, in consideration of the lump sum amount, fully and finally resolves all past and present

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1—1041.4, 2501—2708.

[2] Initially, Claimant was represented by John R. Padova, Jr. She subsequently retained new counsel, Deborah Truscello, who withdrew the claim petition and filed a new one.

2

worker's [sic] compensation claims and/or injuries and/or incidents whether currently known or unknown, which may have arisen in the course and scope of Claimant's employment with the Employer/Defendant....

(Certified Record [C.R.], 5/21/14 WCJ Decision, at A-9.)

With respect to benefits paid and benefits to be paid, the Agreement provided:

> This is a contested matter and by entering into the C&R Agreement, the Employer is not accepting liability and there is no admission of liability on the part of the Employer/Defendant. Therefore, indemnity benefits have not been paid. As of the date of the C&R hearing on 5/15/14, all weekly indemnity benefits and medical benefits, if applicable, will cease. The Employer/Defendant will not be and is not responsible for payment of any medical treatment (whether related to the alleged 7/22/2011 injury or not).....

> * * *

> Claimant shall receive from Employer, a lump sum of Eighty One Thousand Dollars ($81,000.00) which represents consideration to settle the indemnity portion of this claim. In addition, the Claimant shall receive Nineteen Thousand Dollars ($19,000.00) which represents consideration to settle the medical portion of this claim. Out of the Eighty One Thousand Dollars ($81,000.00) settlement, a 20% attorney's fee of Sixteen Thousand Two Hundred Dollars ($16,200.00) shall be deducted and paid to Claimant's attorney, Deborah Truscello, Esq., pursuant to Claimant's Fee Agreement. Therefore, Claimant shall net $64,800 out of the $81,000.00 settlement plus $19,000.00 for payment of any and all medical bills and any and all outstanding

3

liens against the Claimant. Net total payable to the Claimant is $83,800.00 ($64,800.00 + $19,000.00).

Claimant understands that the payment of $19,000.00 to Claimant, represents settlement of any and all medical bills whether outstanding or not, and/or any and all liens applicable to the Claimant. Claimant understands and accepts that this is a contested matter and Employer will not pay any medical bills on behalf of the Claimant. Furthermore, the Claimant understands that she is responsible for payment, any and all medical bills, and any and all liens that may exist against her. The Employer materially rely [*sic*] on the assertion by the Claimant that she is responsible for payment of any medical bills and/or liens against her, in settling this matter.

* * *

The payment of these sums shall fully and finally release all past, present, and future claims for indemnity and medical benefits under the Workers' Compensation Act for Claimant's injuries and/or alleged injuries…. Furthermore, the Claimant understands and agrees that this C&R Agreement, in consideration of the lump sum amounts, fully and finally resolves all past and present worker's [sic] compensation claims and/or injuries and/or incidents whether currently known or unknown, which may have arisen in the course and scope of Claimant's employment with the Employer….

The Parties have agreed that any regular weekly indemnity and or medical benefits will stop effective 5/15/14. Claimant shall not be entitled to indemnity or medical benefits on or after 5/15/14.

The Employer will not be responsible and will not pay for any of Claimant's medical bills and/or liens or costs against her, whether reasonable, necessary or related to the alleged injury or not. Claimant understands that private health insurance may choose not to pay for her medical treatment and that she is responsible for

4

payment of the bills related to her medical treatment and any other liens and costs against her, incurred in litigation of this matter.

(*Id.* at A-6, A-9–A-10.) Claimant executed the Agreement, acknowledging that she read it in its entirety, understood it, and discussed its contents and effect with her attorney.

## II.

A hearing was held before the WCJ on approval of the C&R Agreement, during which Claimant introduced her petition for approval as well as numerous attachments. She testified that she spent several hours reviewing the terms of the Agreement with her attorney, Ms. Truscello, at which time she had the opportunity to ask questions about the Agreement. She stated that she understood counsel's answers to her questions and verified that the information in the C&R Agreement was accurate.

Based upon the Agreement's language, Claimant and her counsel had the following exchange:

Q      So you understand that as of today, you're settling your Workers' Compensation Claim Petition for what is contained in this Agreement?

A      Yes.

Q      And that you can't come after the County for anything additional than what we have in this Agreement?

5

A    Correct.

Q    Okay. And you understand that?

A    Yes.

Q    And that's what you want to do?

A    Yes.

* * *

Q    Okay. Now, you understand that any medical treatment you have after today for these areas of your body, that you can't go against the County for that medical treatment because we're settling the case once and for all today?

A    Correct.

(C.R., 5/15/14 Transcript, at 11–12, 17.)

Claimant stated that she received medical benefits through County Assistance Welfare (Welfare) which covered some of the medical treatment she received as a result of her work injury. She acknowledged that Welfare asserted a lien with regard to payments made by two different carriers because her medical coverage switched mid-way through her case.

With respect to the outstanding medical bills and the liens, she testified as follows:

Q    And the point I'm trying to make is that I'm legally responsible to make sure that those liens that were

6

sent to me from the different agencies for medical treatment for the work injury that I'm responsible to make sure those medical bills get paid. You understand that; correct?

A    Correct. Correct.

Q    Okay. Now, you also understand that the County, even though your outstanding medical bills somewhat exceed the amount, but the County is going to pay $19,000.00 specifically for reimbursement of those outstanding medical bills; correct?

A    Correct.

Q    So, we have to take the 19,000—you understand that we have to take the $19,000.00 that the County is going to be issuing and pay those outstanding medical bills with that money?

A    I understand.

* * *

JUDGE STOKES:        Is it going to exceed 19,000?

[Counsel]:   Yes, but I have agreements from all of the medical providers and—

[Claimant]:  She negotiated it, yes.

[Counsel]:   --I negotiated the amounts down and it comes up—the total is 19,000.

* * *

JUDGE STOKES: Does—is the medical bills—is she going to have any bills coming to her door after she accepts the money from any of these medical providers, including Welfare or anyone else?

7

> [Counsel]: No, just as long as she realizes that we have to divvy up the 19,000 and pay her outstanding medical bills with it.
>
> JUDGE STOKES: But the answer is "no"?
>
> [Counsel]: Correct. The answer is no.

(*Id.* at 20–22.)

Claimant voiced concern that she could receive medical bills for services already rendered and thereby incur more than $19,000.00 in medical expenses. Following an off-the-record conversation, the following exchange occurred:

> Q So you understand that the County is going to give you 19,000 towards outstanding medical bills regardless of whatever that balance due is; correct?
>
> A Yes, correct.
>
> Q And you are in agreement with that?
>
> A Yes, correct.
>
> Q Are you satisfied with that?
>
> A Yes.

(*Id.* at 24–25.)

With respect to any lien asserted by Mr. Padova, Claimant testified:

Q     There is another issue with your existing or prior Counsel and that's not part of this Agreement; correct?

A     Correct.

Q     But if there are liens with regard to that or any issues, you understand that that's your responsibility as far as any issues with your prior attorney?

A     Correct.

(*Id.* at 28.)

On cross-examination, Claimant reiterated her understanding that the settlement was full and final, regardless of whether her condition worsens. She also insisted that the $19,000.00 representing medical payments be sent directly to her, rather than to her attorney, and agreed that she was obligated to pay outstanding medical bills with those funds. At the conclusion of the hearing, Claimant waived the 20 day appeal period.

On May 21, 2014, the WCJ granted Claimant's petition, finding that she understood the full legal significance of the Agreement. On June 9, 2014, Claimant appealed the WCJ's approval to the Board, claiming that she did not understand the full legal significance of the Agreement and that representations made by her counsel on the record as to the amount of outstanding medical bills were false.[3]

---

[3] Prior to appealing, Claimant sent an e-mail directly to the WCJ, expressing concern over the fact that her settlement check was mailed to a third-party rather than to her, and stating **(Footnote continued on next page…)**

Noting that a C&R Agreement may only be rescinded upon a clear showing of fraud, deception, duress, mutual mistake or unilateral mistake which is the fault of an opposing party, the Board reiterated Claimant's testimony and found that she failed to satisfy her burden. Specifically, the Board reasoned that Claimant did not argue the existence of a mutual mistake and that Claimant failed to show that Employer knew of a unilateral mistake under which Claimant labored. Likewise, Claimant did not present any evidence of fraud or duress but rather, asserted only in her brief "acts of negligence by her former counsel, disputes concerning medical bills, and a claim for counsel fees by another former counsel." (6/4/15 Board Opinion, at 6.) Because it determined that the WCJ's finding that Claimant understood the full legal significance of the Agreement was supported by substantial evidence, the Board affirmed.

**III.**

In an appeal initiated by new counsel,[4] Claimant argues that the WCJ's decision approving the C&R Agreement should be reversed because

_____

**(continued…)**

that after settlement of her case, she was informed she owed $22,000.00 to a particular physician, despite the fact that her counsel advised on the record that her outstanding medical bills did not exceed $19,000.00. She also advised that following settlement, Mr. Padova filed a lawsuit against her to protect his attorney's lien in her case. After she filed an appeal, Employer filed a motion to quash Claimant's appeal, which the Board denied, explaining that it would consider Employer's arguments when ruling on the merits of the appeal.

[4] We review Board decisions to determine whether errors of law were made, whether constitutional rights were violated, and whether necessary findings of fact are supported by substantial evidence. *Ward v. Workers' Compensation Appeal Board (City of Philadelphia)*, 966 A.2d 1159, 1162 n.4 (Pa. Cmwlth.), *appeal denied*, 982 A.2d 1229 (Pa. 2009). Substantial **(Footnote continued on next page…)**

Claimant did not fully understand the legal consequences of the C&R Agreement. Specifically, Claimant contends that "she understood, as stated by her counsel, that counsel had negotiated agreements with all medical providers and the $19,000.00 would pay her medical bills." (Amended Brief of Petitioner, at 15.) In support of this argument, Claimant states that she presented the Board with clear and credible evidence that her previous counsel had not resolved the medical bills prior to the hearing and that Mr. Padova would maintain an attorney's lien, but that the Board refused to consider this evidence because it was not of record and was asserted only in her brief. She suggests that it would have been impossible to present this evidence to the WCJ at the time of the C&R hearing, as it did not surface until after approval of the Agreement. As such, she moves this Court to reverse the Board's ruling and remand this matter to the Board with instructions that it consider her evidence.

It is well-settled law that once approved by a WCJ, a C&R Agreement "is final and binding on the parties." *Farner v. Workers' Compensation Appeal Board (Rockwell International)*, 869 A.2d 1075, 1978 (Pa. Cmwlth.), *appeal denied*, 890 A.2d 1061 (Pa. 2005). Courts may rescind a compromise and release

---

**(continued…)**

evidence has been defined as evidence which a reasonable mind might accept as adequate to support a conclusion. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 612 A.2d 434, 437 (Pa. 1992).

Before this Court, Employer filed another motion to quash Claimant's petition for review, which we denied, directing Employer to assert its arguments on the merits in its appellate brief.

agreement based on a clear showing of fraud, deception, duress or mutual mistake. *Su Hoang v. Workers' Compensation Appeal Board (Howmet Aluminum Casting, Inc.)*, 51 A.3d 905, 908 (Pa. Cmwlth. 2012). "However, the party seeking to set aside the agreement has the burden of proof, and the test to set aside a compromise and release on the basis of mistake is more stringent than for fraud or duress. Indeed, evidence demonstrating a mutual mistake must be clear, precise and indubitable." *Id.* at 908–09 (internal citation omitted).

In our decision in *Su Hoang*, we addressed a claimant's contention that his C&R Agreement with an employer should be rescinded based upon mutual and/or unilateral misunderstanding. Specifically, the claimant asserted that at the time the parties entered into the C&R Agreement, both believed that the employer had paid all of the claimant's outstanding medical bills. We rejected the claimant's theory of mutual mistake, reasoning that he failed to present any evidence showing that the employer was mistaken regarding the unpaid medical bills at the time the parties settled. *Id.* at 909; *see also Farner*, 869 A.2d at 1079 (finding that although the claimant asserted that she entered the C&R Agreement while under the mistake that her former employer would continue paying medical insurance premiums, she presented no evidence that employer shared that mistake at the time and, therefore, determining that the claimant failed to satisfy her burden with regard to mutual mistake).

With respect to unilateral mistakes, we summarized the law as follows:

> Generally, a unilateral mistake which is not caused by the fault of the opposing party affords no basis for relief. However, if a party to a contract knows or has reason to know of a unilateral mistake by the other party and the mistake, as well as the actual intent of the parties, is clearly shown, relief will be granted to the same extent as if a mutual mistake existed.

*Su Hoang*, 51 A.3d at 910 (internal quotation marks and citations omitted). Noting that the claimant presented no evidence of the employer's intent, we determined that the record was devoid of any evidence that the employer knew or should have known of the claimant's mistake.

On appeal, Claimant has apparently abandoned her mutual mistake theory, as she claims only that she, and not Employer, mistakenly believed that the $19,000.00 settlement with regard to medical bills would cover her outstanding medical bills in their entirety. *See Tyler v. Unemployment Compensation Board of Review*, 591 A.2d 1164, 1167 (Pa. Cmwlth. 1991) ("When a Claimant appeals an issue, but fails to address the issue in his brief, the issue is waived.").

With respect to Claimant's theory of unilateral mistake, even assuming *arguendo* the truth of the allegations in her appellate brief, she has failed to satisfy her burden of proof. She has failed to assert that Employer knew or should have known that the $19,000.00 would not cover all of her outstanding medical expenses, let alone to prove Employer's actual intent by clear evidence. *See Su Hoang*, 51 A.3d at 910. Moreover, at the hearing, she affirmatively stated that the County's obligation was limited to $19,000.00, even though her

13

outstanding medical bills somewhat exceeded the amount. Claimant does not attribute her misunderstanding to Employer but to her prior counsel who purportedly misinformed her that she had reduced the outstanding medical bills to $19,000.00 when she had not and allegedly misinformed her with respect to the attorney lien filed by her former attorney. However, these claims ring in legal malpractice, and while she may have labored under a unilateral mistake at the time she entered the Agreement, nothing she presented demonstrates Employer's knowledge of her mistake or intent at the time they entered into the Agreement.

A review of the record makes clear that Claimant met with Ms. Truscello and reviewed the Agreement for several hours in advance of the hearing. She testified that all of her questions were answered satisfactorily and that she fully understood the terms of the Agreement. She specifically acknowledged and agreed with Ms. Truscello's statement that "even though [the] outstanding medical bills somewhat exceed the amount, but the County is going to pay $19,000.00 specifically for reimbursement of those outstanding medical bills." (C.R., 5/15/14 Hearing, at 21.)

Although Ms. Truscello did state that she negotiated the medical bills down to $19,000.00, Claimant voiced concern over what would happen if she received bills in excess of that amount, and the following exchange occurred:

> Q     So you understand that the County is going to give you 19,000 towards outstanding medical bills regardless of whatever that balance due is; correct?
>
> A     Yes, correct.

14

Q      And you are in agreement with that?

A      Yes, correct.

Q      Are you satisfied with that?

A      Yes.

(*Id.* at 24–25.)

This testimony aligns with the express language of the C&R Agreement, explaining that it "fully and finally resolves all past and present workers' compensation claims and/or injuries and/or incidents whether currently known or unknown, which may have arisen in the course and scope of Claimant's employment with the Employer/Defendant…." (C.R., 5/21/14 WCJ Decision, at A-9.) The Agreement further specified that as of the date of the C&R hearing, "Employer/Defendant will not be and is not responsible for payment of any medical treatment (whether related to the alleged 7/22/2011 injury or not)….." (*Id.* at A-9.) With respect to medical bills and liens, Claimant agreed that the $19,000.00 was a settlement of all of her medical bills, outstanding or not, and of all liens applicable to the Claimant. She also agreed that *she*, and not Employer, is responsible for the payment of all medical bills and liens, regardless of whether they were reasonable or necessitated by her work injury, and regardless of whether they were covered by private health insurance. Likewise, she understood that to the extent her prior attorney asserted a lien, she was solely responsible for his payment.

Based upon the foregoing, we find the WCJ's determination that Claimant fully understood the C&R Agreement and its legal effect supported by substantial evidence.[5] While some evidence of record may be indicative of Claimant's confusion regarding the status of her outstanding medical bills, the critical inquiry before us is "whether there is any evidence which supports the WCJ's factual finding," not whether there exists evidence to support a factual finding to the contrary. *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998).

Accordingly, we affirm the Board's order upholding the WCJ's approval of the C&R Agreement.



DAN PELLEGRINI, Senior Judge

---

[5] Moreover, a C&R Agreement may not be rescinded on the basis that the parties underestimated a claimant's damages. *See Buttermore v. Aliquippa Hospital*, 561 A.2d 733, 735 (Pa. 1989) ("[I]f such a release can be nullified or circumvented, then every written release and every written contract or agreement of any kind no matter how clear and pertinent and all-inclusive, can be set aside whenever one of the parties has a change of mind or whenever there subsequently occurs a change of circumstances which were unforeseen, or there were after-discovered injuries, or the magnitude of a releasor's injuries was unexpectedly increased, or plaintiff made an inadequate settlement. It would make a mockery of the English language and of the law to permit this release to be circumvented or held to be nugatory.") (internal citation omitted), *reargument denied*, 580 A.2d 313 (Pa. 1990); *Barszczewski v. Workers' Compensation Appeal Board (Pathmark Stores, Inc.)*, 860 A.2d 224, 227 (Pa. Cmwlth. 2004) ("[I]t is clear that Claimant could not seek rescission of the compromise and release agreement on the basis that the parties underestimated the 'damages', *i.e.* the compensation benefits, to which he was entitled at the time of its execution."); *Felix v. Giuseppe Kitchens & Baths, Inc.,* 848 A.2d 943, 949 (Pa. Super. 2004) ("[U]nderestimating the amount of damages ... or making a settlement before damages are accurately ascertained does not constitute a mutual mistake.").

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Diana McGinley,                              :
                          Petitioner         :
                                             :
            v.                               :
                                             :
Workers' Compensation Appeal                 :
Board (County of Delaware),                  :
                          Respondent :  No. 1082 C.D. 2015

# **O R D E R**

AND NOW, this 7th day of <u>March</u>, 2016, the order of the Workers' Compensation Appeal Board dated June 4, 2015, in the above-captioned matter is hereby affirmed.

---

DAN PELLEGRINI, Senior Judge